483 A.2d 561

**COMMONWEALTH of Pennsylvania**

v.

**Barbara J. PERRY, Appellant.**

Superior Court of Pennsylvania.

Submitted March 6, 1984.

Filed Oct. 19, 1984.

Petition for Allowance of Appeal Denied April 10, 1985.

496

J. Wesley Oler, Jr., Carlisle, for appellant.

John M. Eakin, District Attorney, Carlisle, for Commonwealth, appellee.

Before WICKERSHAM, MONTEMURO and MONTGOMERY, JJ.

## OPINION

WICKERSHAM, Judge:

Appellant Barbara J. Perry and her husband, Craig, were arrested and charged with robbery and conspiracy on July 30, 1981. On December 10, 1981, appellant was found guilty by a jury on one count each of robbery and conspiracy. On December 14, 1981, her husband also was found guilty on both counts. Appellant filed motions for a new trial and in arrest of judgment, which were subsequently denied in an opinion and order of the lower court *en banc* dated February 17, 1982. On May 4, 1982, appellant was sentenced to a term of imprisonment of not less than two and one-half (2½) nor more than eight (8) years. On May 14, 1982, after a hearing, appellant's motion for modification of sentence was dismissed.

On May 17, 1982, the Office of Public Defender of Cumberland County was appointed by the lower court to repre-

sent the appellant as a result of her allegations of ineffectiveness of trial counsel. A motion for reconsideration of appellant's sentence was granted by President Judge Shughart on June 1, 1982. A hearing was held on certain allegations of ineffectiveness on June 16, 1982. Thereafter, by order dated July 8, 1982 and amended July 15, 1982, President Judge Shughart reaffirmed the sentence as originally imposed and dismissed the ineffectiveness claims. This appeal timely followed.

The facts pertinent to this appeal may be summarized as follows. On July 30, 1981, at approximately 10:00 p.m., a black male approached the attendant at the Cam II Service Center on Route 11, Hampden Township, Cumberland County. He pointed a gun at the attendant and demanded money. After handing the robber $137.00 in bills, the attendant was told to lie down along the side of the service station. The robber then ran on foot to the adjoining parking lot and got into the passenger side of a station wagon. The vehicle then proceeded onto Route 11 in the direction of Harrisburg.

The attendant immediately phoned the police and supplied them with a description of a tall black male wearing a blue fishing hat and carrying a silver-barrelled pistol. He indicated that the suspect was riding in the passenger side of a Plymouth or Dodge station wagon, copper or tan in color, which was headed north on Route 11. This information was broadcast over the county police network and several patrol officers immediately proceeded to cover the various available escape routes.

Within minutes of County Control's radio bulletin, Patrolman Phelps of the Lemoyne Police Department observed the suspect vehicle travelling northbound on Interstate 83 (Route 11 merges into Interstate 83). Officer Phelps followed and eventually stopped the vehicle in Swatara Township, Dauphin County. Appellant, who was driving the car, produced a driver's license indicating a residence in Coatesville. When the officer questioned her as to her reason for being in the area, she appeared nervous and gave a vague

answer about visiting friends. At that time appellant and her husband were placed in the patrol car and Officer Phelps returned to the Perry's car and looked for weapons. He reached under the seat and pulled out a blue fishing hat and a silver-barrelled revolver.

Several minutes later, Patrolman Rich of the Hampden Township Police arrived with the victim. The victim identified the vehicle, the hat, and the pistol, but was unable to positively identify Mr. Perry, although he did indicate to the officer that Mr. Perry looked like the perpetrator of the robbery. At that time, Officer Rich placed both Perrys under arrest. A pat-down search was conducted by a female police intern with the Swatara Township Police and $137.00 was found in the crotch area of appellant. Appellant's husband later gave a statement admitting to the robbery.

In her first issue on appeal, appellant argues that Officer Phelps had no probable cause to arrest her and that, therefore, the information must be quashed or the evidence obtained pursuant to the arrest must be suppressed.[1] We disagree.

█ The test for determining the existence of probable cause is well settled.

In determining the presence of probable cause, the crucial test is whether there were facts available at the time of the initial apprehension which would justify a man of reasonable caution in the belief that a crime had been committed and that the individual arrested was the probable perpetrator.... In considering probable cause, we deal not with certainties, ... but rather with a common sense determination of reasonableness.

*Commonwealth v. Sabb,* 269 Pa.Super. 206, 212, 409 A.2d 437, 440 (1979) (citations omitted).

1. Appellant states the issue as follows:
   Did the lower court err in refusing to suppress evidence or quash the information based upon an illegal arrest and search without probable cause?
   Brief for Appellant at 4.

The existence of probable cause can be determined only upon an examination of the facts of each individual case. Instantly, we agree with the lower court that the facts support a finding of probable cause.

We are satisfied that the facts and circumstances apparent to [Officer] Phelps at the time of the arrest would justify a reasonably prudent person in the belief that [appellant] was involved in the robbery which had just been committed at the CAM 2 station. He saw a vehicle which matched perfectly the description of the getaway car. He knew that the perpetrator of the crime was a black male, and he observed a black male seated on the passenger side of the station wagon. Because he was in radio contact, Phelps also knew that none of the other police officers involved in sealing off the area had spotted a vehicle matching the description of the robber's getaway car. Moreover, from the time of the initial broadcast reporting the robbery until the suspect vehicle was observed by Phelps, only seven minutes had elapsed, and Phelps knew that this period of time was consistent with the amount of time it would take for one to drive from the CAM 2 station to the area where he was positioned. These facts and circumstances themselves constitute probable cause to justify [appellant's] arrest, *see Commonwealth v. Wilder*, 461 Pa. 597, 337 A.2d 564 (1975) (plurality decision) (probable cause to arrest occupants of vehicle existed where their car matched description of car used in connection with a shooting and arrest is made within fifteen minutes of the shooting), but they are not all that Phelps had to go on. It must be recalled that before he made the arrest, Phelps spoke with [appellant] and he was given a vague response to his inquiry about why she was in the area. We conclude that Phelps had probable cause to arrest [appellant] and that he acted properly under the circumstances.

Lower ct. op. at 6–7.

In *Commonwealth v. Urbina*, 290 Pa.Super. 117, 434 A.2d 157 (1981), the defendant was arrested for committing

an armed robbery at a Weis Market. The operator of a service station located across the street from the Weis store observed an automobile, not from the neighborhood, leave the area right after the robbery, at a speed fast enough to attract attention. The service station operator followed the automobile to a parking lot, and, only a few minutes after the robbery, he took a police officer to the lot. The officer then arrested the defendant who was seated at the driver's side of the automobile and who fit the general description of the robber broadcast over the police radio. This court held that the officer had sufficient information to support a reasonable belief that defendant had committed a crime and to arrest him without a warrant.

■ In *Urbina,* the basis for the service station operator's belief that the driver of the car had perpetrated the robbery was the speed at which the car left the area and the fact that it was "not from the neighborhood." It was on this information that the officer accompanied the operator to the parking lot. Instantly, the robbery victim gave a description of the getaway car and of one of the occupants. He also informed the police of the direction in which the car was headed. Officer Phelps spotted a car matching the description in the radio broadcast headed in a direction consistent with the path of the getaway car. This observation was made just minutes after the robbery. He noted that there was a black male passenger in the front seat of the car. When he stopped the car, Officer Phelps observed that both passengers appeared nervous and that appellant responded in a vague manner when questioned as to her reasons for being in the area. We believe that the officer had sufficient facts to arrest appellant.

Appellant relies heavily on *Commonwealth v. Nastari* 232 Pa.Super. 405, 335 A.2d 468 (1975). In *Nastari,* two white males robbed a bowling alley and fled in a light colored Volkswagen. Ten minutes after the crime, which occurred at about 2:00 a.m., descriptions of the suspects, the getaway car, and the direction of flight were broadcast over the police radio. The police stopped a car meeting the

description and noticed a green bank bag and a large screwdriver in the automobile. They then searched the vehicle, found two pistols and the money taken in the robbery, and arrested the occupants. The issue before the court was whether the initial stop of the vehicle violated the fourth amendment. This court held that it did not because the facts justified an investigatory stop and that the articles in the officers' plain view subsequent to the stop gave them probable cause to arrest.

During the course of its opinion, the *Nastari* court stated that the police did not have probable cause to arrest at the moment of the stop. Appellant argues that the same is true in the instant case. We disagree. Officer Phelps had basically the same information as did the officers in *Nastari*. He also knew, however, that the other major avenues of escape were being watched by other officers and that none of them had seen a vehicle matching a description of the getaway car. Also, subsequent to the stop, both occupants of the vehicle appeared nervous and appellant responded vaguely to the officer's question. We believe that the facts available to Officer Phelps at the time of arrest were sufficient to justify a man of reasonable caution to believe that a crime had been committed and that appellant was involved in the commission of the crime. The arrest and search were supported by probable cause and therefore, the court properly refused to suppress the evidence or quash the information.

Appellant's next issue deals with the weight and sufficiency of the evidence:

Did the lower court err in concluding that evidence respecting appellant's operation of a car following a robbery was sufficient to sustain verdicts of guilty of robbery and conspiracy and that the verdicts were not against the weight of the evidence?

Brief for Appellant at 4.

In testing the sufficiency of the evidence, we accept as true all evidence upon which the finder of fact could properly base the verdict, giving the Commonwealth the

benefit of all reasonable inferences from the evidence, ... and then ask whether, so viewed, the evidence was sufficient to prove guilt beyond a reasonable doubt, .... Although a guilty verdict may not be based on "suspicion or surmise," ... the Commonwealth may rely on circumstantial evidence to prove its case.

*Commonwealth v. Gordon,* 329 Pa.Super. 42, 52, 477 A.2d 1342, 1347 (1984) (citations omitted).

■ Instantly, appellant was charged with robbery [2] as an accomplice. "Accomplice" is defined in 18 Pa.C.S. § 306 [3]:

(c) **Accomplice defined.**—A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

.    .    .    .    .

(ii) aids or agrees or attempts to aid such other person in planning or committing it.

In the case at bar, the evidence and the inferences properly arising therefrom are sufficient to support the conclusion that appellant was the driver of the getaway car. It is also clear that she hid the fruits of the crime on her person. Thus, the evidence was sufficient to prove that appellant aided in the commission of the robbery. *Commonwealth v. Ross,* 248 Pa.Super. 312, 375 A.2d 113 (1977); *Commonwealth v. Esposito,* 236 Pa.Super. 127, 344 A.2d 655 (1975).

■ Appellant was also charged with criminal conspiracy [4] as a result of this incident. She argues that the evidence does not establish the "shared intent" necessary to find her guilty of conspiracy. The existence of a "shared intent" or a "common agreement" may be inferred from the evidence of the circumstances surrounding the allegedly conspiratorial activities, and from the relationship between and the conduct of the parties. *Commonwealth v. Gordon,*

2. Act of December 6, 1972, P.L. 1482, No. 334, § 1; as amended Act of June 24, 1976, P.L. 425, No. 102, § 1; 18 Pa.C.S. § 3701(a)(1).

3. Act of December 6, 1972, P.L. 1482, No. 334, § 1.

4. Act of December 6, 1972, P.L. 1482, No. 334, § 1; as amended Act of April 28, 1978, P.L. 202, No. 53, § 7(2); 18 Pa.C.S. § 903(a)(1).

*supra.* While it is true that there was no direct evidence of an unlawful agreement between appellant and her husband, such an agreement can readily be inferred from appellant's conduct. She was the driver of the getaway car and the money taken in the robbery was found on her person. *Commonwealth v. Esposito, supra.* Thus, the evidence was sufficient to sustain the conspiracy conviction.

Appellant also contends that the verdicts were against the weight of the evidence.

> Whether a new trial should be granted on grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial judge, and his decision will not be reversed on appeal unless there has been an abuse of discretion.... The test is not whether the court would have decided the case in the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Taylor,* 324 Pa.Super. 420, 425, 471 A.2d 1228, 1230 (1984) (citations omitted).

Instantly, after a careful review of the record, we agree with the lower court that the verdicts were not against the weight of the evidence. We find no abuse of discretion.

> Appellant states the third and final issue as follows: Did the lower court err in concluding that appellant's trial counsel was effective with respect to advice on rights against self-incrimination and with respect to securing of a jury unprejudiced against blacks?

Brief for Appellant at 4.

■ On June 16, 1982, a full evidentiary hearing was held as to appellant's claims of ineffectiveness of counsel. The lower court then issued a thorough opinion discussing these ineffectiveness claims. After a review of the entire record, with special attention paid to the transcript from the June 16 hearing, we find that Judge Shughart's opinion, filed July 8, 1982, properly disposes of the ineffectiveness allega-

tions raised in this appeal. We find no need to discuss them further.

Judgment of sentence affirmed.