611 A.2d 206

COMMONWEALTH of Pennsylvania

v.

James J. CALDERINI, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 16, 1992.

Filed June 3, 1992.

Reargument Denied Aug. 10, 1992.

Stephen H. Begler, Pittsburgh, for appellant.

Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before CAVANAUGH, WIEAND and HESTER, JJ.

WIEAND, Judge.

James Calderini was tried by jury and was found guilty of robbery.[1] Following the denial of post-trial motions, he was sentenced to serve a term of imprisonment for not less than five (5) years nor more than ten (10) years. On direct appeal from the judgment of sentence, Calderini contends that there was insufficient evidence to support his conviction and that the trial court committed reversible error during its instructions to the jury. Finding no merit in these contentions, we affirm the judgment of sentence.

In reviewing a challenge to the sufficiency of the evidence, we must determine, "whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense[ ] charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Jackson*, 506 Pa. 469, 472–473, 485 A.2d 1102, 1103 (1984). "This standard is equally applicable to cases where the evidence is circum-

1. Calderini was found not guilty of criminal conspiracy.

stantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Hardcastle,* 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). In addition, the facts and circumstances established by the Commonwealth "need not be absolutely incompatible with defendant's innocence, but the question of any doubt is for the jury unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.' " *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977), quoting *Commonwealth v. Libonati,* 346 Pa. 504, 508, 31 A.2d 95, 97 (1943).

So viewed, the evidence at appellant's trial established that, on March 24, 1990, at or about 7:30 p.m., John Chilton entered the Springdale Pharmacy and asked an employee if the store's owner-pharmacist was present. Chilton was told that the owner was not there, but that another pharmacist was on duty. He then asked the pharmacist on duty if she would show him literature about a certain drug. When the pharmacist retrieved the requested information, Chilton grabbed her by the wrist and pushed her to the floor. Subsequently, Chilton began kicking the cabinet in which narcotic drugs were stored, and he removed therefrom a bottle containing Tylenol with codeine pills before fleeing the store. During the robbery, Joseph Rometo was observed standing outside the pharmacy, and, after Chilton had fled the store, Rometo was seen walking away from the pharmacy in the same direction as Chilton.

Springdale Police Officer Gene Polsinelli, immediately prior to receiving a radio report of the robbery, had observed a large brown sedan pull away from the curb about one block from the pharmacy. The occupants of the vehicle appeared suspicious. Twenty minutes after the robbery, Officer Joseph Naviglia of the Tarentum Borough Police Department observed a brown Lincoln Continental being driven out of Springdale. The vehicle was driven by the appellant, James Calderini, and its passengers were Joseph

Rometo and John Chilton. Prior to this observation, Naviglia had been informed of the robbery via police radio and had been told that Rometo had been seen outside the pharmacy during the robbery by Chilton. Naviglia called for backup and followed the vehicle to the home of Rometo. When the vehicle left Rometo's home, Naviglia continued to follow it until it broke down on Route 28. Upon the arrival of other officers, Naviglia approached the vehicle and asked appellant for identification. Appellant told the officer his name was Spencer and gave the officer identification reciting that his name was Spencer. When appellant was subsequently searched, police found on his person four Tylenol with codeine pills of the same kind which had been taken by Chilton from the pharmacy.

Based upon these facts, appellant, Rometo and Chilton were charged with robbery and criminal conspiracy. Chilton entered a plea of guilty to robbery, and appellant and Rometo were subsequently tried jointly upon the theory that they had been accomplices of Chilton. Both were convicted of robbery, but acquitted on the charge of conspiracy. In this appeal, Calderini argues that the Commonwealth failed to prove that he was an accomplice because there was no evidence that he had been present at the scene of the crime or that he actively participated therein.

■ "A person is legally accountable for the conduct of another person when he is an accomplice of that person in the commission of [an] offense." *Commonwealth v. Orlowski*, 332 Pa.Super. 600, 616, 481 A.2d 952, 960 (1984). See: 18 Pa.C.S. § 306.

> An accomplice is one who "knowingly and voluntarily cooperates with or aids another in the commission of a crime." *Commonwealth v. Carey*, 293 Pa.Super. 359, 373, 439 A.2d 151, 158 (1981). See: 18 Pa.C.S. § 306. See also: *Commonwealth v. Jones*, 213 Pa.Super. 504, 508, 247 A.2d 624, 626 (1968). To be an accomplice, "one must be an active partner in the intent to commit [the crime]." *Commonwealth v. Fields, supra* 460 Pa. [316] at 319–320, 333 A.2d [745] at 747 [1975]; *Commonwealth*

*v. McFadden,* 448 Pa. 146, 150, 292 A.2d 358, 360 (1972). "An [accomplice] must have done something to participate in the venture." *Commonwealth v. Flowers,* 479 Pa. 153, 156, 387 A.2d 1268, 1270 (1978).

*Commonwealth v. Brady,* 385 Pa.Super. 279, 284–285, 560 A.2d 802, 805 (1989). However, "[t]he least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice." *Commonwealth v. Graves,* 316 Pa.Super. 484, 489–490, 463 A.2d 467, 470 (1983). See: *Commonwealth v. Coccioletti,* 493 Pa. 103, 109, 425 A.2d 387, 390 (1981).

█ Although appellant is correct in his assertion that there was no direct evidence placing him at or near the pharmacy at the time of the robbery, the evidence did show that only twenty minutes later he was driving a vehicle which a jury could find, by inference, was the getaway car. At that time, moreover, appellant had in his possession four Tylenol pills of the same type which had been taken during the robbery. His possession of these pills was alone circumstantial evidence of guilt, for our Supreme Court has observed that a person's possession of property shown to have been possessed recently by "the victim of a robbery is evidence that such person was a party to the robbery." *Commonwealth v. Wilson,* 394 Pa. 588, 606, 148 A.2d 234, 244 (1959), *cert. denied,* 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82 (1959). See: *Commonwealth v. Kaufman,* 179 Pa.Super. 247, 251, 116 A.2d 316, 319 (1955) ("possession of goods recently stolen in the perpetration of a robbery or burglary is evidence of guilt on charges of not only larceny but of both robbery and burglary as well."); *Commonwealth v. Lehman,* 166 Pa.Super. 181, 185, 70 A.2d 404, 406 (1950) (same). See also: *Commonwealth v. Lawson,* 204 Pa.Super. 239, 242, 203 A.2d 406, 407 (1964) (defendant's possession of recently stolen goods warranted jury in finding that he was the robber); *Commonwealth v. Fusci,* 153 Pa.Super. 617, 621, 35 A.2d 93, 95 (1943) ("[P]ossession of recently stolen property is evidence that the possessor is the thief."). " 'However, such evidence is not conclusive and

may be rebutted. It is for the trier of fact alone to say whether the guilt of the defendant is a reasonable inference, fairly deducible from his possession of recently stolen property, in light of all the circumstances, including the reasonableness of his explanation, if any, as to how he came into possession.' " *Commonwealth v. Thomas*, 305 Pa.Super. 158, 165, 451 A.2d 470, 473 (1982), quoting *Commonwealth ex rel. Chatary v. Nailon*, 416 Pa. 280, 283, 206 A.2d 43, 45 (1965).

When appellant's possession of the pills is considered along with his driving of the getaway car only twenty minutes after the robbery, it seems clear that a jury could infer that appellant was a participant in the robbery as Chilton's accomplice. See: *Commonwealth v. Perry*, 334 Pa.Super. 495, 503, 483 A.2d 561, 565 (1984) (defendant's driving of getaway car minutes after her husband had robbed gas station and her possession of money taken in the robbery constituted sufficient evidence to establish her guilt as an accomplice to the robbery). Here, appellant also gave a false name and identification when stopped by the police. This was an additional circumstance tending to show consciousness of guilt. See: *Commonwealth v. Boyle*, 498 Pa. 486, 497, 447 A.2d 250, 255–256 (1982); *Commonwealth v. Bolish*, 381 Pa. 500, 524, 113 A.2d 464, 476 (1955); *Commonwealth v. Meadows*, 381 Pa.Super. 354, 362, 553 A.2d 1006, 1010 (1989). Therefore, despite the fact that there was no direct evidence placing appellant at the scene of the robbery, we hold that the evidence that he was driving the getaway car a short time after the robbery, that he falsely identified himself to police and that he had in his possession fruits of the robbery was sufficient to establish circumstantially that appellant was an accomplice in the commission of the robbery.[2]

2. Our holding is unaffected by the testimony of Rometo and Chilton that appellant was not involved in the robbery, for the credibility of such testimony was for the jury to evaluate. " '[I]t is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The factfinder is free to believe all, part or none of the evidence.' " *Commonwealth v.*

Appellant also contends that the trial court committed reversible error when, in response to an inquiry from the jury, the court gave the following additional instruction:

Now, ladies and gentlemen, you also asked about an accessory after the fact, and that's different from being an accomplice. An accessory after the fact is somebody who does something in connection with the crime that did not—that did not do anything to promote or facilitate the commission of the crime, did not solicit, command, encourage the other person who committed crime to do so or did not aid or agree to aid or attempt to aid the other person in planning it or committing it. He may have some connection with it, as one of [the] attorneys gave you an example after the crime is all over, somebody hands a person a gun or something, had nothing to do with the crime at all. He may have known it was committed, however, if he tried to help the person to do it.

In other words say if you committed a homicide, a shooting, and after the whole thing is over, you hand some guy a gun, say keep it for me, didn't do anything about it, said sure, I will keep it for you, can be an accessory after the fact. He has the murder weapon. But if he knows a murder was committed and is hiding the weapon to help the defendant, then he is an accomplice, very fine line.

In other words, the accomplice is somebody that is helping the person do the crime or telling him to do it or encouraging him to do it. The accessory is sort of an accessory, not necessary, but he is around.

N.T. 11/5/91 at pp. 174–176. Appellant argues, specifically, that the court's example distinguishing an accomplice from an accessory after the fact was incorrect.

"In reviewing jury instructions to determine whether reversible error has been committed by a trial court, we

*Stockard,* 489 Pa. 209, 213, 413 A.2d 1088, 1090 (1980), quoting *Commonwealth v. Tate,* 485 Pa. 180, 182, 401 A.2d 353, 354 (1979). Therefore, the jury was free to reject the exculpatory testimony given by Chilton and Rometo.

consider the charge as a whole. Error will not be predicated on isolated excerpts. Rather it is the general effect of the charge that controls." *Commonwealth v. Myers,* 376 Pa.Super. 41, 50, 545 A.2d 309, 314 (1988). "Even if the court erred when it instructed the jury, we will reverse only if the error prejudiced the appellant." *Commonwealth v. Klinger,* 369 Pa.Super. 526, 540, 535 A.2d 1060, 1066 (1987). A jury instruction given by the trial court will be upheld so long as it "sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision." *Commonwealth v. Prosdocimo,* 525 Pa. 147, 154, 578 A.2d 1273, 1276 (1990).

■■■ We agree with appellant that the trial court's example distinguishing the concepts of accomplice liability and accessory after the fact was erroneous. However, we also agree with the Commonwealth that this part of the charge was wholly superfluous and does not require the award of a new trial. In this case, appellant had not been charged as an accessory after the fact[3] but with being an accomplice to a robbery. It was the defense that requested that the jury be charged that an accessory after the fact is

**3.** Criminal liability for being an accessory after the fact is imposed by 18 Pa.C.S. § 5105, which provides as follows:

**§ 5105. Hindering apprehension or prosecution**

(a) **Offense defined.**—A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime, he:

(1) harbors or conceals the other;

(2) provides or aids in providing a weapon, transportation, disguise or other means of avoiding apprehension or effecting escape;

(3) conceals or destroys evidence of the crime, or tampers with a witness, informant, document or other source of information, regardless of its admissibility in evidence;

(4) warns the other of impending discovery or apprehension, except that this paragraph does not apply to a warning given in connection with an effort to bring another into compliance with law; or

(5) volunteers false information to a law enforcement officer.

(b) **Grading.**—The offense is a felony of the third degree if the conduct which the actor knows has been charged or is liable to be charged against the person aided would constitute a felony of the first or second degree. Otherwise it is a misdemeanor of the second degree.

not an accomplice. Although such an instruction was given by the court, it was not necessary under the facts of this case, and, indeed, probably should not have been given. What was necessary was that the jury be fully and correctly instructed upon the law pertaining to accomplice liability. Our review of the jury charge and the additional instructions given in response to the jury's inquiry convinces us that the trial court fully and accurately instructed the jury regarding accomplice liability. Any error in the court's discussion regarding the circumstances necessary to prove one an accessory after the fact was unnecessary to the issues before the jury. As such, the trial court's erroneous instruction was harmless. We hold, therefore, that appellant is not entitled to a new trial because of the trial court's unnecessary attempt to define the crime of accessory.

Having found sufficient evidence to sustain appellant's conviction for robbery, and finding no other error which would entitle appellant to a new trial, the judgment of sentence will be affirmed.

Affirmed.

HESTER, J., files a Dissenting Opinion.

HESTER, Judge, dissenting:

I respectfully dissent from the majority's conclusion that the evidence was sufficient to support appellant's conviction of robbery. I believe that the evidence does not establish that appellant knew either before or after the fact that the pharmacy had been robbed. I would reverse the judgment of sentence.

Appellant, John Chilton, and Joseph Rometo were charged with robbery and conspiracy. Chilton subsequently pled guilty to robbery; Rometo was appellant's co-defendant at trial. The trial evidence established the following. Sue Molnar was the Commonwealth's first witness. She was working at Springdale Pharmacy in Springdale on March 24, 1990, when John Chilton entered the store at approximately 7:30 p.m. Chilton asked for the store's own-

er-pharmacist, Sam Tallarico, by first name. Ms. Molnar advised him that another pharmacist was on duty. Chilton asked the pharmacist, Terry Kirin, about literature regarding the side effects of a drug that he said that he was taking. Ms. Kirin retrieved the requested material and brought it to Chilton when he suddenly grabbed her wrist and pushed her to the floor. Chilton then started to kick the cabinet where narcotic drugs were kept. Ms. Molnar screamed for Brenda Rudolph, who was at the cash register, to telephone police. Chilton grabbed a plastic bottle containing the prescription medicine Tylenol with codeine and ran. At trial, Ms. Molnar identified Chilton and said that she personally knew Rometo. She could not identify appellant, and she testified that she did not see either appellant or Rometo on the day of the robbery.

Terry Kirin, the pharmacist, testified as follows. She observed Rometo in the pharmacy on the morning of the robbery at approximately 9:30 a.m. She recognized Rometo because he tripped over a card rack, paced, and "really made notice of himself." Notes of Testimony ("N.T."), 11/2–5/90, at 25. At approximately 6:30 p.m. that day, Ms. Kirin received a telephone call for a prescription for a controlled substance used to induce sleep. The patient name given was "Linda Rometo," and the prescribing doctor was "Dr. Miller." *Id.* at 26. Since Ms. Kirin could not verify the prescription due to the hour, she refused to fill it.

Ms. Kirin also confirmed Ms. Molnar's version of the robbery. Chilton entered, asked for Sam and materials about a drug, pushed Ms. Kirin to the floor, threatened to kill her, and took Tylenol with codeine from the narcotic drug cabinet. After Chilton started to kick the cabinet, Ms. Kirin stood up, telephoned the police, and went to the front of the store to watch where Chilton fled. At that time, she also saw Rometo walking away from the pharmacy and heading in the same direction as Chilton. They both went toward the parking lot used by pharmacy customers. Ms. Kirin testified that she never saw appellant at any time. She only identified Rometo at trial.

Brenda Rudolph was at the cash register in the front of the store when Ms. Molnar told her to call the police and to watch where Chilton went. Ms. Rudolph panicked and ran outside the store, where she saw Rometo standing beside the door. She began running and then decided to return to the pharmacy to see if anyone was injured. She saw Chilton exit the pharmacy just as she was entering it. Ms. Rudolph testified that she never saw appellant.

Springdale Police Officer Gene Polsinelli testified that he heard the radio call for the robbery. Prior to the call, he had passed the pharmacy in his police cruiser and noticed a large brown sedan in the area. The car was parked about a block from the pharmacy. The officer's suspicions were aroused since Springdale is a small town and since the men in the car, which was a luxury sedan, looked "the criminal type" to the officer. *Id.* at 44. The officer did not state the precise number of people viewed in the car; he said only that there were "several guys." *Id.* Officer Polsinelli could not identify any of the occupants of the vehicle.

At the time, Officer Polsinelli thought that the state store may be a robbery target since the car was parked closer to it than the pharmacy. He turned his cruiser around and looked into the state store. When everything appeared normal, he left. As he was headed away from the state store, the police broadcast concerning the robbery was transmitted.

Chilton, Rometo, and appellant were apprehended by Tarentum police twenty to twenty-five minutes following the robbery in a white and brown Lincoln Continental. Appellant was driving. Tarentum Borough Police Officer Joseph T. Naviglia searched appellant and found four Tylenol with codeine pills in his pocket.

Following the close of the Commonwealth's case, appellant demurred to the evidence. He did not present a defense, but Chilton and Rometo both testified in Rometo's defense. Chilton said that he was a drug addict at the time of the robbery and that Tallarico often sold him narcotic drugs at a significant profit without a prescription. Chilton

went to the pharmacy on March 26th hoping to find Tallarico. When he was not there, Chilton, on his own, decided to rob the store of drugs. He stated specifically that he had not discussed taking the drugs by force with Rometo prior to entering the store but that they planned on buying drugs from Tallarico. Chilton also testified that he did not know appellant prior to the day of the robbery and that appellant was picked up hitchhiking just after the robbery. Chilton also testified that he allowed appellant to drive the car because Chilton was intoxicated and appellant was not. Rometo's testimony was consistent.

The test applied in reviewing whether a demurrer should have been granted is to accept the Commonwealth's evidence, together with all reasonable inferences from that evidence, and to determine whether it is sufficient to support a finding of guilt beyond a reasonable doubt by the factfinder. *Commonwealth v. Turner*, 491 Pa. 620, 421 A.2d 1057 (1980). The evidence establishes that Chilton, not appellant, committed the robbery. In order to establish appellant's guilt, the Commonwealth was required to prove that appellant was either an accomplice or co-conspirator of Chilton in the commission of the robbery. *Commonwealth v. Brady*, 385 Pa.Super. 279, 560 A.2d 802 (1989).

An accomplice is one who *knowingly* and voluntarily promotes or facilitates the commission of an offense and agrees or aids or attempts to aid such other person in planning or committing the offense. *Commonwealth v. Potts*, 388 Pa.Super. 593, 566 A.2d 287 (1989), *petition for allowance of appeal granted*, 525 Pa. 656, 582 A.2d 322 (1990). A conspiracy requires *an agreement* to engage in a criminal act. *Commonwealth v. Brady, supra*. Accepting the Commonwealth evidence as true and all reasonable inferences therefrom, I believe that the evidence was not sufficient to overcome appellant's demurrer on the robbery charge. Even rejecting the testimony of Chilton and Rometo that appellant was picked up hitchhiking following the robbery, there was nothing in the record to establish appellant's *knowledge* that a robbery occurred. Furthermore,

disbelief of contrary evidence cannot substitute for proof, *Commonwealth v. Scott*, 409 Pa.Super. 313, 320, 597 A.2d 1220 (1991), and I believe that the Commonwealth's evidence was insufficient to establish that appellant knew about Chilton's robbery of the store—either before or after it occurred.

First, the Commonwealth evidence establishes conclusively that appellant was never near the pharmacy and never viewed Chilton's actions. Ms. Molnar, Ms. Kirin, and Ms. Rudolph all testified that they did not see appellant at or around the crime scene. Furthermore, these three witnesses, at various times, viewed the entire vicinity of the pharmacy during and immediately after the robbery. They all stated positively that they did *not* see appellant.

Although the Commonwealth suggests Officer Polsinelli's testimony established appellant's presence at the scene, I strongly disagree. Officer Polsinelli never identified appellant as one of the car occupants, and he never stated how many men he saw. Furthermore, given where the car was located, even if appellant was in the car during the robbery, he could not have viewed the inside of the pharmacy, where the robbery occurred.

Equally significant is the fact that this robbery did not involve a weapon of any sort. Neither Chilton nor Rometo nor appellant possessed a weapon when arrested, and Chilton never displayed a weapon during the robbery.

These two facts, *viz*, that appellant did not see Chilton rob the pharmacy and that the robbery was not committed with a weapon, are the keys that distinguish this case from the cases relied upon by the Commonwealth. In *Commonwealth v. Perry*, 334 Pa.Super. 495, 483 A.2d 561 (1984), and *Commonwealth v. Esposito*, 236 Pa.Super. 127, 344 A.2d 655 (1975), the actor committed the robberies with a visible firearm. Thus, conspiracy or accomplice liability could be inferred from the fact that the non-actor must have known that the actor was going to rob the particular establishment due to the actor's possession of a visible weapon. Similarly, in *Commonwealth v. Ross*, 248 Pa.Super. 312, 375 A.2d 113

(1977), the accomplice actively participated in the robbery with the actor by entering the establishment with that person and distracting the victim's attention while the actor stole the money.

In this case, appellant's conviction rests solely on the following pieces of evidence: he was driving the car twenty to twenty-five minutes after the incident, he had four Tylenol with codeine tablets in his pocket for which he had no prescription, and he gave false identification. This evidence, however, must be viewed in light of the fact that the Commonwealth evidence establishes that the robbery was committed by Chilton's "pushing" the employee to the ground. There was no evidence that possibly could establish that appellant knew that Chilton had *robbed* the store.

Furthermore, Rometo's evidence supports the conclusion that appellant did not know that the store was robbed. Both Chilton and Rometo stated that they regularly purchased controlled substances from the owner of the pharmacy and went into the pharmacy on that day *planning to purchase drugs illegally.* Not only did the Commonwealth fail to rebut this evidence, the testimony of two of its witnesses, Ms. Kirin and Ms. Molnar, supports it. Both Ms. Kirin and Ms. Molnar testified that Chilton requested the owner by name prior to engaging in his bizarre conduct.

While reasonable inferences must be drawn in the Commonwealth's favor, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt. *Commonwealth v. Clinton,* 391 Pa.212, 219, 137 A.2d 463, 466 (1958). The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fall even under the limited scrutiny of appellate review. *Commonwealth v. Roscioli,* 454 Pa. 59, 62, 309 A.2d 396, 398 (1973); *Commonwealth v. Garrett,* 423 Pa. 8, 222 A.2d 902 (1966).

*Commonwealth v. Scott, supra,* 409 Pa.Super. at 315, 597 A.2d at 1221.

I believe that given the manner in which the store was robbed and given the fact that the evidence establishes conclusively that appellant did not view the robbery, appellant's mere presence in the car after this incident, even with the pills in his pocket, was not sufficient to establish that he either conspired or agreed to aid Chilton in robbing the store, before or after the fact. The evidence establishes only his guilt in possessing an illegal substance—which explains why he gave police false identification. The inferences from this evidence do not establish appellant's guilt *beyond a reasonable doubt,* and I believe the disposition of this case is controlled by *Commonwealth v. Brady, supra,* where we held that a defendant's mere presence at the scene of a burglary and apprehension in the car where the burglary proceeds were located were not sufficient to sustain a conviction for burglary, even though the defendant had viewed the burglary. Accordingly, I respectfully dissent.