J-S96002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JUSTIN DWIGHT HERSHBERGER, | |
| Appellant | No. 1281 WDA 2015 |

Appeal from the Judgment of Sentence Entered March 24, 2015
In the Court of Common Pleas of Cambria County
Criminal Division at No(s):
CP-11-CR-0001254-2014
CP-11-CR-0001256-2014
CP-11-CR-0001257-2014

BEFORE:  BENDER, P.J.E., BOWES, J., and SOLANO, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED JANUARY 19, 2017**

Justin Dwight Hershberger appeals from the March 24, 2015 judgment of sentence of an aggregate term of 6 to 12 years' incarceration, imposed after he was convicted of multiple counts of burglary, theft, and related offenses.  Appellant challenges the sufficiency of the evidence to sustain his convictions, as well as the discretionary aspects of his sentence.  After careful review, we affirm.

This Court previously summarized the facts of Appellant's case in our disposition of the appeal of his co-defendant, Nicholas Alan Myers:

> On February 16, 2014, the police arrived at the Summerhill Borough Fire Department and Summerhill Borough Municipal Building, which are approximately 100-200 feet apart, based upon reports of break-ins.  Upon investigation, the police determined that the perpetrators had attempted to enter the fire

station, but were unable to gain access; however, the perpetrators were able to access a two-story storage building located next to the fire station by prying open the door. The perpetrators also pried open the door and entered the Summerhill Borough Municipal Building. The police also investigated a burglary at the South Fork Fire Department[1] on February 16, 2014, wherein the perpetrators forcibly pried open a door to gain access to the building and subsequently rummaged through several emergency vehicles. The police determined that numerous items had been stolen during the burglaries, including, *inter alia*, portable radios, chargers, metal gas cans, a cordless drill, a printer, a Keurig coffee maker, and a 32-inch Vizio television.

[1] The South Fork Fire Department is approximately five miles from the Summerhill Borough Municipal Building.

During an unrelated theft investigation, the police determined that [Appellant] was a person of interest in the burglaries. After obtaining consent to search the homes of [Appellant] and his father, the police discovered some of the stolen items at each home.

Natalee Dryzal ("Dryzal"), who has a child with Myers, stated that at around midnight on February 16, 2014, Myers and [Appellant] left Myers's mother's home together and returned a few hours later. When they returned, [Appellant] placed an unopened bag in Myers's bedroom. After Myers's mother left the home, Myers and [Appellant] opened the bag, which contained, *inter alia*, portable radios with yellow stickers on them. Myers and [Appellant] indicated that they got the radios from the "fire hall," after they had a "problem with the first place." Dryzal also stated that she accompanied [Appellant] when he attempted to sell a television.

***Commonwealth v. Myers***, No. 1273 WDA 2015, unpublished memorandum at 1-2 (Pa. Super. filed October 24, 2016).

Following a joint trial in February of 2015, a jury convicted both Appellant and Myers of multiple counts of burglary,[1] attempted burglary,[2] theft by unlawful taking,[3] receiving stolen property,[4] and criminal mischief.[5] On March 24, 2015, Appellant was sentenced to an aggregate term of 6 to 12 years' imprisonment.[6] He filed a timely post-sentence motion, which was denied on July 31, 2015. Appellant then filed a timely notice of appeal, and also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed a Rule 1925(a) opinion on October 23, 2015.[7]

On appeal, Appellant presents two issues for our review, which we have reordered for ease of disposition:

I. Whether there was sufficient evidence to find [Appellant] guilt[y] beyond a reasonable doubt of the charges when there was not any direct evidence that he entered any of the

---

[1] 18 Pa.C.S. § 3502(a)(4).

[2] 18 Pa.C.S. § 901(a).

[3] 18 Pa.C.S. § 3921(a).

[4] 18 Pa.C.S. § 3925(a).

[5] 18 Pa.C.S. § 3304(a)(5).

[6] Myers, who was sentenced alongside Appellant, received the same aggregate sentence for his convictions.

[7] During the pendency of this appeal, Appellant filed with this Court several motions and requests for extensions of time, which caused the delay in our disposition of his case.

structures nor was evidence sufficient for a jury to find that [Appellant] was guilty beyond a reasonable doubt that he committed any of the crimes.

II. Whether the sentencing court abused its discretion when sentencing [Appellant], where the sentencing court did not properly consider that [Appellant] had a drug problem and mental health problems and where the sentencing court did not order [Appellant] to undergo a mental health evaluation to assist the sentencing court in fashioning an appropriate sentenc[e] considering [Appellant's] mental health.

Appellant's Brief at 4.

In Appellant's first issue, he challenges the sufficiency of the evidence to sustain his convictions for burglary, attempted burglary, theft by unlawful taking, and criminal mischief. To begin, we note our standard of review of such a claim:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. ***Commonwealth v. Moreno,*** 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. ***Commonwealth v. Hartzell,*** 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. ***Moreno, supra*** at 136.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011).

In this case, Appellant contends that the Commonwealth failed to offer sufficient proof that he was present at the scene of the burglaries, or that he entered the burglarized buildings. He stresses that "a person is guilty of burglary if he or she **enters** a building or occupied structure with the intent to commit a crime therein, unless he or she is licensed or privileged to

- 4 -

enter." Appellant's Brief at 15-16 (citing 18 Pa.C.S. § 3502(a)(4)) (emphasis added by Appellant). Appellant further avers that his other "related offenses" of attempted burglary, criminal mischief, and theft by unlawful taking also required "evidence establishing [that] Appellant was present at the structures on the night in question, entered the property or physically damaged the property on February 16, 2014." *Id.* at 16. Appellant contends that the only evidence of his presence at, and/or entry into, the burglarized structures was "the biased and inconsistent testimony of Natalee Dryzal…." *Id.* He stresses that the items stolen "were common, non-identifiable items with no specific markings[,]" *id.*, and the Commonwealth did not present any fingerprint evidence, video surveillance footage, or eyewitnesses to the crimes. Consequently, Appellant concludes that the Commonwealth failed to produce sufficient evidence proving that he committed the above-stated offenses.

We disagree. Notably, in *Myers*, this Court addressed similar arguments made by Myers in challenging the sufficiency of the evidence to support his identical convictions. The *Myers* panel reasoned:

> The evidence, viewed in a light most favorable to the Commonwealth, established that on February 16, 2014, the police arrived at the Summerhill Borough Fire Department and Summerhill Borough Municipal Building, and determined that the perpetrators had entered the municipal building and a storage building next to the fire department by prying open the doors. N.T., 2/16/15, at 48-50, 53, 55, 59-60, 111-14, 128-32, 185-86, 190-91; *see also id*. at 83-84, 146-47 (wherein witnesses detail the amount of damages caused by the break-ins). The perpetrators took numerous items from the buildings, including

copper wire, a drill, a Keurig coffee maker, portable radios and chargers, and gas cans. *Id*. at 67-70, 72-78, 101-05, 191. The perpetrators had also attempted to access the fire department, but were unable to pry open the door. *Id*. at 56, 58-59, 191. Further, the perpetrators additionally pried the door open at South Fork Fire Department, rummaged through various emergency vehicles and stole, *inter alia*, radios which were countywide service radios used by police, fire, and EMS, a digital video recorder, and a 32-inch Vizio television. *Id*. at 109, 112-14, 118-21, 128-32, 141, 145; *see also id*. at 116-17 (wherein Mark Wadsworth, president of the South Fork Fire Department, testified that the radios were important because the department used them extensively to keep track of personnel).

Dryzal testified that Myers and [Appellant] were at Myers's mother's home in South Fork on the night in question. N.T., 2/17/15, at 15, 16-17. Dryzal stated that Myers and [Appellant] left the home together around midnight and returned a couple of hours later. *Id*. at 17-18, 23. Upon returning, Myers and [Appellant] possessed a bag that they placed in Myers's bedroom until his mother left the home. *Id*. at 18-19, 41. Thereafter, Myers and [Appellant] opened the bag. *Id*. at 19. Dryzall stated that the bag contained about four radios, with yellow stickers on them, chargers, and a digital recording device. *Id*. at 21, 23, 33. Dryzall indicated that Myers and [Appellant] removed the stickers from the radios and each kept one radio on their person. *Id*. at 22, 34-35. Further, Myers and [Appellant] indicated that they got the radios from the "fire hall," and that they had a "problem with the first place" so they went to the "second place." *Id*. at 31-32. Dryzall also stated that she subsequently left Myers's mother's home with [Appellant] to sell a television. *Id*. at 33.

The police found items from the Summerhill Borough and South Fork burglaries at [Appellant's] father's and [Appellant's] homes. *Id*. at 56-57; N.T., 2/16/15, at 193-95, 213-15. The evidence additionally indicated that the radios found at [Appellant's] home matched those stolen from the South Fork Fire Department. N.T., 2/17/15, at 98; N.T., 2/16/15, at 120, 123-25. Further, Justin Thomas testified that [Appellant] attempted to sell him a Keurig coffee maker a couple of weeks after the burglaries. N.T., 2/17/15, at 11.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that the evidence

was sufficient evidence for the jury to find Myers guilty of the above-mentioned crimes as an accomplice of [Appellant]. Indeed, the evidence demonstrated that the perpetrators broke into three separate buildings, the South Fork Fire Department, a storage building at the Summerhill Borough Fire Department and the Summerhill Borough Municipal Building, and attempted to break into the Summerhill Borough Fire Department building by prying open the doors. The evidence additionally demonstrated that Myers and [Appellant] together left Myers's mother's home around midnight, and indicated to Dryzall that they took radios from the "fire hall" after they had encountered problems at the "first place." While some of the items stolen from the buildings were found at [Appellant's] and his father's home, Myers was an active participant in the criminal enterprise, and was criminally responsible for actions of [Appellant] as an accomplice. *See* [***Commonwealth v.***] ***Murphy***, 844 A.2d [1228,] 1237 [(Pa. 2004)] (noting that a reasonable inference of guilt may be made where the evidence, viewed in a light most favorable to the Commonwealth, establishes that the inference is more likely than not); *see also* [***Commonwealth v.***] ***Gross***, 101 A.3d [28,] 35 [(Pa. 2014)] (stating that "even non-substantial assistance, if rendered with the intent of promoting or facilitating the crime, is sufficient to establish complicity."). Thus, because Myers was [Appellant's] accomplice, Myers was legally responsible for [Appellant's] crimes, and the evidence is sufficient to support Myers's convictions. ***See Commonwealth v. Lambert***, 795 A.2d 1010, 1024 (Pa. Super. 2002) (concluding that appellant was legally responsible for his co-defendant's crimes where appellant acted as an accomplice to his co-defendant by driving his co-defendant to the scene of the burglary, and leaving the scene of the crime with the co-defendant); ***Commonwealth v. Calderini***, 611 A.2d 206, 209 (Pa. Super. 1992) (stating that while there was no direct evidence placing the appellant at the scene of the robbery, "the evidence that he was driving the getaway car a short time after the robbery, that he falsely identified himself to police, and that he had in his possession fruits of the robbery, was sufficient to establish circumstantially that appellant was an accomplice in the commission of the robbery.").

***Myers***, No. 1273 WDA 2015, unpublished memorandum at 15-18.

Our review of *Myers* reveals that Myers presented similar arguments as Appellant in attacking the sufficiency of the evidence to support his convictions for the same offenses for which Appellant was convicted. *See id.* at 11 (setting forth Myers's argument "that the Commonwealth did not present evidence that he entered the Summerhill Borough Municipal Building, the storage building at the Summerhill Borough Fire Department, or the South Fork Fire Department"; also noting Myers's argument "that there was no evidence of anyone fleeing the scene or eyewitnesses placing [him] at the scene of the burglaries, fingerprints found at the buildings, or Myers['s] possessing tools to break into the buildings"; Myers's further claiming that Dryzel's testimony, alone, was insufficient evidence upon which to convict him). The *Myers* panel rejected these arguments, and concluded that the evidence was sufficient to convict him (as an accomplice) and Appellant (as a principal) of the above-stated crimes. Consequently, we likewise conclude that the evidence was sufficient to support Appellant's convictions.

Appellant next challenges the discretionary aspects of his sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether

appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra, supra* at 912–13.

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, Appellant filed a timely notice of appeal, as well as a timely post-sentence motion. In that motion, he asked the court to "consider him for rehabilitative Boot Camp" because "he had a drug dependency problem at the time of his arrest," and because it was a "top priority" for him to "overcome that [drug] dependency…." Appellant's Post-Sentence Motion, 4/2/15, at 2 (unnumbered). Appellant has also included a Rule 2119(f) statement in his appellate brief. *See* Appellant's Brief at 10-11. However, in that statement, Appellant raises numerous claims that we will not consider, as he failed to preserve them in his post-sentence motion, and he does not direct our attention to where he raised them at the time of his

sentencing hearing.[8]  **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); **Commonwealth v. Mann**, 820 A.2d 788, 793 (Pa. Super. 2003) ("[I]ssues challenging the discretionary aspects of sentencing must be raised in a post-sentence motion or by raising the claim during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect[] of a sentence is waived.").

In regard to the one claim that Appellant preserved in his post-sentence motion - *i.e.*, that the court should have sentenced him to 'Boot Camp' due to his drug dependency issues - Appellant does not mention this specific claim in his Rule 2119(f) statement, other than offering the boilerplate statement that the court failed to consider his rehabilitative needs.  **See** Appellant's Brief at 11.  Even if we consider Appellant's cursory comment as presenting a substantial question for our review, we would deem his underlying argument meritless for the reasons that follow.

_____

[8] For instance, he contends that his sentence "is not consistent with the gravity of the violations at issue"; that the court erred by imposing "nearly all of the sentences consecutively[,]" thus "leading to a disproportionately lengthy sentence"; that the court failed to properly consider his need for "mental health treatment"; that the court did not state on the record its reasons for Appellant's sentence; and that "[t]he [c]ourt offered no reason on [the] record for failing to assess or consider … mitigating factors[,] even when the Commonwealth agreed that [] Appellant was suffering from severe mental health issues."  Appellant's Brief at 10-11 (citations to the record omitted).

At the sentencing hearing, the court had the benefit of a pre-sentence report, it was aware of the relevant sentencing guideline ranges, and it was informed that Appellant had drug and alcohol dependency issues, as well as a mental health diagnosis of bipolar disorder. N.T. Sentencing, 3/24/15, at 4, 8. The court also noted that Appellant had "four juvenile adjudications" for "nine separate crimes[,]" including burglary. *Id.* at 18. It explained to Appellant at the sentencing hearing that, due to his lengthy criminal history, he was not eligible for any 'boot camp' or intermediate punishment program. *See* N.T. Sentencing, 3/24/15, at 22-23. Moreover, the court reasoned that such a program, or a mitigated-range sentence, would be inappropriate in this case, given Appellant's lack of remorse and his failure to rehabilitate or reform his criminal conduct. *Id.* at 18, 22. Essentially, the court reasoned that a lengthier sentence was warranted, as all prior efforts to rehabilitate Appellant had failed. *Id.* at 18, 22-23.

Given the information possessed by the sentencing court, and its statements at the time it imposed Appellant's term of incarceration, we would ascertain no abuse of discretion Appellant's sentence, even had he raised a substantial question for our review.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  1/19/2017