535 A.2d 192

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James J. DIDYOUNG, Appellant.**

Superior Court of Pennsylvania.

Argued May 6, 1987.

Filed Jan. 4, 1988.

Thomas S. McCready, Lansford, for appellant.

Richard W. Webb, District Attorney, Jim Thorpe, for Com.

Before BROSKY, WIEAND and BECK, JJ.

WIEAND, Judge:

James J. Didyoung was tried by jury and was found guilty of attempt to commit homicide [1] and aggravated assault [2] because of the May 27, 1985 beating of his sleeping brother about the head with a crowbar.[3] Post-trial motions were denied, and Didyoung was sentenced to serve a term of imprisonment for not less than five years nor more than ten years.[4] On appeal, he argues that he should receive a new trial because a juror failed to disclose during voir dire (1) that the juror's uncle, who died in 1968, had been a police officer; and (2) that the cousin of the juror's wife was married to Chief of Police Thomas Mase, who had been the arresting officer. Appellant also contends that the trial court abused its discretion by imposing an excessive sentence. We find no merit in these contentions and affirm the judgment of sentence.

Prior to trial the prospective jurors were given a questionnaire which asked, inter alia, the following question:

Are (have) you or any member of your immediate family: ... presently (or in the past been) a member of any law enforcement agency?

During voir dire, the following questions were asked by the prosecution:

Is there anyone here who knows Chief [Thomas] Mase and, because of their knowledge of Chief Mase, would feel they could not decide the case solely on the evidence?

Does anybody in this prospective panel have family members who are involved in law enforcement?

One of the jurors, Dennis McHugh, failed to give an affirmative answer to any of the foregoing questions and was seated as a juror. Appellant contends that the juror's failure to disclose that his deceased uncle had been a

1. 18 Pa.C.S. §§ 901, 2501.

2. 18 Pa.C.S. § 2702(a)(1) and (4).

3. Although the brother survived the attack, he suffered extensive brain damage and remains in an apparently irreversible coma.

4. The sentencing court held that the aggravated assault had merged in the conviction for attempted homicide for sentencing purposes.

policeman and that his wife's cousin was then married to the arresting officer was improper and deprived him of a fair trial.

"'It is the duty of the parties to ascertain, by proper examination at the time the jury is impaneled, the existence of any reasons for objection to the jurors.... [T]he failure to do so and to make objection at the proper time operates as a waiver....'" *Commonwealth v. Aljoe,* 420 Pa. 198, 206, 216 A.2d 50, 55 (1966), quoting *Commonwealth v. Walker,* 283 Pa. 468, 472–473, 129 A. 453, 454 (1925). Such a waiver will be excused, however, where "'the party affected has been intentionally misled or deceived by the juror or the opposite party....'" *Id.,* quoting *Traviss v. Commonwealth,* 106 Pa. 597, 607 (1884).

In *Brown v. United States,* 356 F.2d 230 (10th Cir.1966), where the defendant had been charged with murder, defense counsel asked the potential jurors during voir dire examination whether they "or anyone in their immediate family" had ever been the victim of an attack upon their person. None of the jurors answered affirmatively, and a jury was seated. After defendant had been convicted of murder in the second degree, he learned that a brother of one of the jurors had been murdered during the years prior to trial. Defendant filed a motion for new trial, contending that he had been denied a fair trial and had been denied the effective use of peremptory challenges by the juror's failure to disclose the murder of his brother. The trial court denied the motion, and defendant appealed. In affirming the defendant's conviction the Court of Appeals said:

Certainly the voir dire oath administered to potential jurors obligates them fully to tell the truth. However, no reason appears for concluding that the juror was in fact not fully responsive to the actual interrogatory, which referred to the juror's "immediate family." Such a term is indeed ambiguous, for depending upon such circumstantial variables as age and marital status, it can import different meanings to different individuals. Defense counsel was free to explain to the jury what was meant

by "immediate family", and could have expanded his inquiry to include "family" and "relatives", but he elected to pursue the point no further. It cannot be presumed that the juror's failure to respond to the question was not proper, and an inference of intentional or inadvertent non-disclosure is unwarranted.

. . . .

Disruptive consequences to the trial of criminal cases are suggested by permitting defense counsel to come forth after conviction and successfully contend that, notwithstanding the absence of actual bias, and notwithstanding his own failure sufficiently to pursue voir dire inquiry to expose possible predilections on the part of a prospective juror, that nevertheless probable prejudice must be imputed to the juror as a matter of law and a new trial thereafter granted. "A disqualification which by reasonable diligence could have been discovered before verdict, may not afterwards be made the subject of an attack upon a verdict." *Spivey v. United States,* 5 Cir., 109 F.2d 181, 186, cert. denied 310 U.S. 631, 60 S.Ct. 1079, 84 L.Ed. 1401.

*Brown v. United States, supra* at 232–233.

Recently, in *Commonwealth v. Stark,* 363 Pa.Super. 356, 526 A.2d 383 (1987), this Court adopted the Tenth Circuit's reasoning. In *Stark,* the defendant was convicted by a jury of first degree murder because of the fatal shooting of a man who had at one time been his best friend but who had fallen out of favor with the defendant after he began to date the defendant's estranged wife. During voir dire, defense counsel asked the potential jurors the following question: "Have any of you been separated or divorced from your husband or wife because of the fact that your best friend or a friend of yours had been dating your husband or wife?" None of the jurors ultimately impaneled indicated a positive response. After trial, however, defendant alleged that one of the jurors had intentionally deceived him by failing to reveal, in response to the question, that her husband had left her and had run away with the

baby-sitter. The trial court denied defendant's motion for a new trial and, on appeal, this Court affirmed holding that:

> [D]efense counsel's question was ambiguous; it is not at all clear that it was intended to refer to the conduct between a juror's husband and a babysitter. Thus, there is no basis for inferring from the averments contained in [defendant's] petition that the juror had falsified her answer to the question asked. In the absence of a false response, we will follow the reasoning of the Tenth Circuit and conclude that [defendant] may not now rely upon the juror's [failure to disclose the information] to attack the verdict.

*Id.*, 363 Pa.Superior Ct. at 376, 526 A.2d at 393.

▇ In the instant case we can find no basis on which to infer that the juror intentionally falsified his answers to any of the questions asked of him. The first question, asked via questionnaire, was whether any member of the juror's "immediate family" was or had been a member of a law enforcement agency. Another question, asked by the prosecution, was the same, except that it spoke only in the present tense and spoke generally of "family." The terms "family" and "immediate family" are ambiguous and can import different meanings to different individuals. See: *Brown v. United States, supra.* It is not at all clear that these terms were intended to refer to a spouse's cousin or to a deceased uncle, who had died in 1968 when the juror was only ten years of age. The juror's failure to disclose these distant relationships in response to questions about his "family" and "immediate family" cannot be deemed an intentional deception. If appellant intended to ask the juror to identify his wife's relatives or his long deceased uncle, he might have done so. He cannot now complain because he failed to do so.

The second question contained two parts which were joined in the conjunctive. The question was not whether the jurors knew Chief Mase but whether they knew Chief Mase *"and* would feel they could not decide the case solely on the evidence." To fail to acknowledge knowing Chief

Mase, in response to such a question, was not alone evidence of intentional deception. Although appellant introduced evidence that the juror knew Chief Mase, there was no evidence that he felt he could not put that relationship aside and decide the case on the evidence.

The record discloses that the foregoing questions were posed by the court and prosecuting attorney. Despite an opportunity to do so, defense counsel did not attempt to elicit information pertaining to the juror's relatives or to his or her knowledge of persons engaged in law enforcement. Appellant cannot complain for the first time after trial that the juror failed to divulge information not specifically requested of him during voir dire.

■ The brief filed by appellant in this Court failed to include a statement, as required by Pa.R.App.P. 2119(f), demonstrating a substantial question that the sentence imposed was inappropriate. In *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987), the Supreme Court held that, if properly preserved by appellee, such an omission was fatal to appellate review of the discretionary aspects of the sentence. See: 42 Pa.C.S. § 9781(b). See also: Pa.R.App.P. 902 and 2119(f). In the instant case, however, the defect in appellant's brief has not been challenged by appellee. Therefore, we will determine for ourselves whether the sentencing issue raised by appellant is substantial.

Didyoung contends that the sentencing court abused its discretion by (1) imposing sentence based solely upon the nature of the crime; (2) disregarding the information contained in the pre-sentence report; (3) concluding that Didyoung had a mental problem despite psychiatric reports to the contrary; and (4) refusing to allow character witnesses to speak on Didyoung's behalf. Because several of these allegations, if true, would pose substantial issues sufficient to entitle appellant to relief, we conclude that the issues should be reviewed further.

The imposition of a proper sentence is a matter which is vested in the sound discretion of the trial court, and it will

not be disturbed on appeal unless the sentence exceeds the statutory maximum or is so excessive so as to constitute a manifest abuse of discretion. *Commonwealth v. Sanders,* 339 Pa.Superior Ct. 373, 381, 489 A.2d 207, 211 (1985). However, a sentencing court must consider the history, character, and condition of the defendant and not only the nature and circumstances of the crime in imposing sentence. 42 Pa.C.S.A. § 9725. *See also Commonwealth v. Arent,* 352 Pa.Superior Ct. 520, 522, 508 A.2d 596, 597 (1986). Additionally, the court must consider the rehabilitative needs of the defendant, the need for the protection of the public as well as the gravity of the offense. *Commonwealth v. McCall,* 320 Pa.Superior Ct. 473, 480, 467 A.2d 631, 634 (1983).

*Commonwealth v. Peters,* 358 Pa.Super. 94, 96–97, 516 A.2d 1197, 1198–1199 (1986).

Appellant contends that the sentencing court violated these principles and also the Sentencing Code when it failed to consider information about his background which appeared in the pre-sentence report [5] and, instead, focused solely upon the nature of the crime in imposing sentence. This argument, however, is not factually supported. The record shows that the sentencing court not only considered the information appearing in the pre-sentence report but also gave Didyoung an opportunity to comment thereon. The record discloses further that the trial court considered Didyoung's "condition" and concluded that although psychiatric reports indicated that he did not have a psychiatric disorder, a substantial prison term would enable additional psychiatric tests to be completed so that perhaps it could be determined why such a brutal attack would be committed upon appellant's unsuspecting brother without any apparent remorse therefor.[6] Appellant's contention that the trial

5. This information included Didyoung's lack of a prior criminal record; his age (22 years); his good relationship with his family both prior to and after the commission of the instant offenses; and his attempts to further his education.

6. We reject the contention that the sentencing court improperly concluded that Didyoung had a psychiatric disorder despite a psychiatric

court considered only the nature of the crime, therefore, is without support in the record.

Didyoung's final contention is that the trial court abused its discretion when it refused to permit character witnesses to speak on his behalf. The record shows, however, that Didyoung called no character witnesses. As the sentencing court was stating its reasons for the sentence which it was about to impose, an unidentified spectator stood up and attempted to make an unsolicited statement. The court admonished the spectator not to interrupt and proceeded to impose sentence. At no time during the hearing did Didyoung either object to the court's refusal to permit the spectator to speak or offer the unidentified person as a witness. There was neither error nor abuse of discretion in the sentencing court's admonishment of the spectator.

The judgment of sentence is affirmed.

BROSKY, J., files a concurring and dissenting opinion.

BROSKY, Judge, concurring and dissenting:

I agree with the majority's disposition of the first issue that appellant was not denied his right to a fair and impartial jury trial despite a juror's failure to disclose during voir dire that that juror's uncle, deceased since 1968, had been a police officer and that the spouse of the juror's cousin had been the arresting officer.

The majority states the second issue to be whether the trial court abused its discretion by imposing an excessive sentence. It is true that this is the "issue" which appellant has briefed to this court in the argument portion of his brief and which the majority proceeds to address. However, it is equally apparent that appellant's claim of excessiveness is not the issue properly before us. Instead, appellant's sec-

report to the contrary. Although the court indicated that it had substantial doubts as to the accuracy of the report, it did not reach the conclusion that Didyoung had a psychiatric disorder. Rather, it concluded only that Didyoung should be evaluated further. This was not improper.

ond issue broached to us in the "Statement of Questions Involved" portion of the brief is as follows:

B. DID THE TRIAL COURT ERR IN DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF THE SENTENCE WITHOUT A HEARING?

As stated above, this issue has not been briefed and is therefore waived. Pa.R.App.P. 2116(a) ("This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby."); *Rago v. Nace*, 313 Pa.Super. 575, 460 A.2d 337 (1983). *See also, Commonwealth v. Stufflet*, 322 Pa.Super. 176, 469 A.2d 240 (1983); *Commonwealth v. Sanford*, 299 Pa.Super. 64, 445 A.2d 149 (1982). Conversely, the claim briefed by appellant and addressed by the majority is similarly not before us as it was "not set forth in the statement of questions involved or suggested thereby." Rule 2116(a), *supra*.

Because of the foregoing, my agreement with the majority to affirm the judgment of sentence is limited to the majority's correct disposition of the first and only issue properly before us.