640 A.2d 1368

COMMONWEALTH of Pennsylvania

v.

Ronald STANSBURY, Appellant.

Superior Court of Pennsylvania.

Submitted March 17, 1994.

Filed May 2, 1994.

494

Patrick J. Connors, Asst. Public Defender, Media, for appellant.

Louis G. Steiss, Asst. Dist. Atty., Media, for Com., appellee.

Before BECK, POPOVICH and HOFFMAN, JJ.

HOFFMAN, Judge.

This is an appeal from judgment of sentence for rape and related offenses. Appellant, Ronald Stansbury, presents the following questions for our review:

I. WHETHER THE TRIAL COURT ERRED WHEN IT REFUSED TO PERMIT APPELLANT TO INTRODUCE EVIDENCE THAT PUBIC HAIRS WHICH DID NOT BELONG TO EITHER THE VICTIM OR APPELLANT WERE FOUND ON THE VICTIM'S CLOTHING.

II. WHETHER THE TRIAL COURT ERRED WHEN IT PERMITTED THE COMMONWEALTH TO INTRODUCE EVIDENCE OF CERTAIN ALLEGED PRIOR UNCHARGED CRIMINAL ACTIVITIES OF APPELLANT.

Appellant's Brief at 4. For the reasons set forth below, we affirm.

The relevant facts, as set forth by the trial court, are as follows:

The record reveals that [appellant] first came into contact with the police as a result of an investigation carried out by Detective Kathryn Smith of the Delaware County Criminal Investigation Division and Detective Sergeant Robert Miazza of the Chester Police Department. The detectives were investigating an alleged rape.

On March 19, 1991, the victim presented herself to the Crozer–Chester Medical Center Emergency Room with a complaint of being raped by her uncle[, appellant,] at ap-

proximately 4:00 a.m. that same day. A Rape Kit analysis was performed by hospital personnel. The victim, accompanied by a representative from the sexual abuse unit, was interviewed by Thomas Scarpatto of the Chester Township Police department. The information obtained as a result of the interview was relayed to Detectives Smith and Miazza, and an investigation ensued. The police were told that on March 19, 1991, between the hours of 3:00 a.m. and 4:00 a.m., the victim, a 16–year old minor at the time, was in the kitchen of her home preparing a bottle for her child. [Appellant], who lived in the basement of the victim's home, entered the kitchen from the basement, clad only in his undergarment. [Appellant] approached the victim from the rear and proceeded to rub against the victim's backside. The victim told him to stop. [Appellant] pursued his vulgar intention and again the victim told him to stop. Stansbury retreated to the basement and the victim went to her upstairs bedroom, removed her pants, shut the door and went to bed.

Fifteen minutes later, [appellant] entered the victim's room, sat on the bed, and began fondling the girl. She repeatedly told him to stop and tried to push him away. Despite her protestations and struggle, the victim was unable to prevent [appellant] from pursuing his desires. He forcibly raped the victim. After a few moments, [appellant] withdrew, and left her bedroom. It was discovered that this was not the first time [appellant] has sexually abused his niece. It was only one incident out of several since the victim had been in the third grade. On April 2, 1991, Detective Smith went to interview [appellant] in regard to the allegations at his residence. Detective Smith did not intend to make an arrest at that time. Smith, along with another officer, was freely admitted into the residence, and [appellant] agreed to speak to them. No guns or force were displayed. Both officers were in plain clothes. [Appellant's] movement was not restricted and he could have ended the interview at any time.

[Appellant] initially denied any sexual contact with the victim. Detective Smith didn't feel [appellant] was being truthful, and decided to employ deception to see how [appellant] would respond. The detective told [appellant] that his semen had been found on the victim's panties. Upon hearing this, [appellant] revealed that he had in fact had sexual contact with the victim, but that it had occurred entirely in the kitchen and that it was consensual. This statement was reduced to writing and signed by [appellant] and Detective Smith. The entire interview lasted approximately one hour and the detective left the residence. On April 10, 1991, [appellant] was arrested for the rape of the victim.

Trial Court Opinion, November 19, 1993, at 2–4.

A jury trial was held on November 19, 20 and 21, 1991. On November 21, 1991, appellant was found guilty of rape, involuntary deviate sexual intercourse, aggravated abuse and assault, corrupting the morals of a minor and indecent assault. Post-verdict motions were timely filed and denied. On May 7, 1993, appellant was sentenced to serve a term of forty-to-one-hundred-and-twenty-months imprisonment on the charge of rape and to pay a fine in the amount of three-hundred dollars plus the cost of prosecution.[1] This timely appeal followed.

Appellant first contends that the trial court erred in failing to permit appellant to introduce evidence that pubic hairs which did not belong to either the victim or appellant were found on the victim's clothing. We disagree.

Immediately after the sexual assault, vaginal and cervical smears were taken from the victim which revealed the presence of semen. In addition, the panties worn by the victim at the time of her sexual assault were examined and found to contain traces of seminal fluid and two pubic hairs. The blood type of the male who emitted the semen could not be determined. However, the two pubic hairs did not belong to either appellant or the victim. While the trial court allowed introduction of the semen as evidence of intercourse at the time of

---

1. The remaining counts merged with the count of rape for sentencing purposes.

the rape, evidence of the pubic hairs was excluded. Specifically, the trial court held that as the presence of a third party's pubic hairs is evidence only of the victim's prior sexual conduct, it would improperly prejudice the victim and should be excluded.

In granting the Commonwealth's motion *in limine* to exclude the testimony regarding the pubic hairs, the trial court relied upon Pennsylvania's Rape Shield Law, which provides as follows:

> **(a) General rule.**—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter....

18 Pa.C.S. § 3104.

However, in *Commonwealth v. Majorana*, 503 Pa. 602, 470 A.2d 80 (1983), our Supreme Court noted an exception to the Rape Shield Law:

> We do not believe the legislature intended to prohibit relevant evidence which directly negates the act of intercourse with which a defendant is charged. Where, as here, a defendant offers evidence of intercourse close enough in time to the act with which he is charged that it is relevant to explain the presence of objective signs of intercourse, the protections afforded to the complainant by the Rape Shield Law do not apply.

*Id.* at 611, 470 A.2d at 84.

For this exception to apply, the defendant must first make a specific proffer to the court of exactly what evidence he seeks to admit and precisely why it is relevant to his defense. Once the appropriate proffer has been made, "the court must then undertake a three part analysis of the substance of the proffer. At the trial level, the court must conduct an *in camera* hearing at which they must determine: 1) whether the proffered evidence is *relevant* to the defense at trial; 2) whether the proffered evidence is *cumulative* of evidence otherwise admissible at trial; and 3) whether the proffered

evidence is more probative than prejudicial." *Commonwealth v. Wall,* 413 Pa.Super. 599, 615, 606 A.2d 449, 457 (1992) (citations omitted), *appeal denied,* 532 Pa. 645, 614 A.2d 1142 (1992). Such a determination by the trial court "must be offered due deference and overturned only where there has been an abuse of discretion." *Id.* With this standard of review in mind, we will proceed with the merits of appellant's claim.

■ In the instant action, although we do not have a complete transcription of the notes of testimony from the trial court's *in camera* hearing regarding appellant's proffer, from the trial court's opinion it is clear that appellant has made a sufficient proffer of evidence.[2] We must now ascertain the substance of appellant's proffer.

■ "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Commonwealth v. Spiewak,* 533 Pa. 1, 8, 617 A.2d 696, 699 (1992) (citation omitted). Clearly, the presence of a third party's pubic hairs on the victim's panties implies that the victim had sexual relations with that third party. From this, one could infer that the semen present on the victim's panties and in her vagina was the third party's and, therefore, that the victim had intercourse with the third party rather than appellant. Accordingly, we find that the evidence of the pubic hairs is relevant to appellant's defense. Moreover, as there was no other evidence that the victim had sexual relations with a third party on the night in question, the evidence of the pubic hairs would be non-cumulative. Hence, our final determination is whether the probative value of the evidence sufficiently outweighs its prejudicial effect.

2. Specifically, the trial court states that as part of his proffer, appellant requested introduction of the pubic hairs to demonstrate that the semen present in the victim's vagina as well as the semen present on the victim's panties was not his.

■ In the instant matter, the Commonwealth supported its case with corroborated testimony from both the victim and appellant. At trial, the victim testified that appellant raped her in her bedroom on March 19, 1991, between the hours of 3:00 a.m. and 4:00 a.m. This testimony was supported by appellant's confession to Detective Kathryn Smith of Delaware County Criminal Investigation Division that he had sexual intercourse with the victim at the time of her rape.[3] N.T. at 188. The victim's testimony was also corroborated by the introduction of the victim's panties which were torn and contained semen, as well as the results of an examination of the victim which demonstrated that she had recently had intercourse. In addition, the victim stated that the instant assault had been the latest in a series sexual assaults which had been occurring since she was ten years old. N.T. 38–42. This testimony was corroborated by the testimony of Officer Joseph Hampel of the Chester Police Department who stated that in 1985, the victim had reported two sexual assaults by appellant.

As mentioned above, evidence of the third party's pubic hairs would be relevant to dispel the implication that the semen found on the victim was appellant's and, consequently, could show that the third party, rather than appellant, had intercourse with the victim. At first glance, it would appear that appellant's interest in producing such evidence is paramount to the victim's interest in excluding it. However, in a statement made to the Chester Police, appellant admitted that he did engage in sexual intercourse with appellant. In light of this confession, the prejudice suffered by appellant from the exclusion of the evidence of the pubic hairs was slight.

Moreover, to the extent that the evidence demonstrates that the semen found on the victim was the result of intercourse with a third party rather than appellant, it is minimally persuasive. We first note that the mere presence of these pubic hairs in the victim's panties does not necessarily show that there was actual intercourse or ejaculation resulting from

---

**3.** At trial, appellant again admitted to having sexual relations with the victim. However, this time he stated that there was no penetration.

the victim's sexual activity with the third party. Moreover, there is no indication that the victim's sexual relations with the third party were contemporaneous with the rape. Under these circumstances, it is clear that evidence of the pubic hairs is of limited probative value. Accordingly, after a careful review of the record, we find that the trial court did not abuse its discretion in finding the evidence of the pubic hairs insufficiently probative to overcome its attendant prejudice to the victim.

■ Appellant next contends that the trial court erred in permitting the Commonwealth to introduce evidence of prior uncharged criminal activities of appellant. We disagree.

In *Commonwealth v. Frank*, 395 Pa.Super. 412, 577 A.2d 609 (1990), *appeal denied*, 526 Pa. 629, 584 A.2d 312 (1990), this court stated:

> One of our most fundamental and prized principles in the administration of criminal law is that a distinct crime, except under special circumstances, cannot be given in evidence against a defendant who is being charged for another crime. This is because the fact that a person has committed one offense is not proof that he has committed another and because the effect of the testimony on the jury is nevertheless bound to create prejudice and an emotional reaction on their part against the defendant.

*Id.* 395 Pa.Super. at 418, 577 A.2d at 612 (quoting *Commonwealth v. Burdell*, 380 Pa. 43, 47, 110 A.2d 193, 195 (1955)).

One exception to this general principle exists where the prior criminal acts are "part of the history of the event on trial or part of the natural development of the facts." *Commonwealth v. Brown*, 462 Pa. 578, 591, 342 A.2d 84, 90 (1975) (quoting *Commonwealth v. Williams*, 307 Pa. 134, 148, 160 A. 602, 607 (1932)). Here, the victim testified that the instant sexual assault arose out of numerous previous sexual assaults by appellant which had been occurring for the past seven years. These prior sexual assaults occurred under similar circumstances and were clearly of the same type and nature as the instant assault. Accordingly, we agree with the trial court

that the previous assaults by appellant upon the victim were part of the history of the instant assault and, therefore, the trial court's admission of evidence of these assaults was proper.

Judgment of sentence affirmed.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

I must respectfully dissent from the majority's determination that the lower court properly excluded evidence of the pubic hairs which were found in the victim's underwear and which did not match those of either appellant or the victim on the basis of the Rape Shield Law, 18 Pa.C.S.A. § 3104. Rather, I would permit the appellant to offer the pubic hairs into evidence.

In *Commonwealth v. Wall,* 413 Pa.Super. 599, 606 A.2d 449 (1992), this court set forth the procedure to be employed when a defendant seeks to introduce evidence which facially violates the Rape Shield Law, as follows:

The process begins with the defendant submitting a *specific* proffer to the court of exactly what evidence he or she seeks to admit and precisely why it is relevant to the defense. This procedure forces the defendant to frame the precise issues and interests involved, and prevents him or her from embarking upon "fishing expedition style intrusions on Rape Shield Law protections." Where the proffer is but vague and conjectural, evidence of the victim's past sexual conduct will be excluded and no further inquiry need be entertained.

Where the proffer is sufficiently specific, the court must then undertake a three part analysis of the substance of the proffer. At the trial level, the court must conduct an *in camera* hearing at which they must determine: 1) whether the proffered evidence is *relevant* to the defense at trial; 2) whether the proffered evidence is *cumulative* of evidence otherwise admissible at trial; and 3) whether the proffered evidence is more probative than prejudicial. On appeal, such evidentiary rulings must be offered due deference and

overturned only where there has been an abuse of discretion. Where, however, the proffered evidence excluded by the Rape Shield Law is relevant, non-cumulative, and more probative of the defense than prejudicial [to the victim], it must be admitted.

*Wall,* 606 A.2d at 457 (Citations omitted).

Instantly, I agree with the majority that appellant has made a specific proffer regarding the pubic hairs and that evidence of the pubic hairs is relevant to the defense and non-cumulative. However, I disagree with the majority's conclusion that the probative value of the pubic hairs is outweighed by their prejudicial effect upon the victim.

At trial, appellant admitted having a sexual encounter with the victim in the kitchen on the night in question during which he ejaculated. However, he denied having *intercourse* with the victim. Although prior to his arrest appellant told the police that he engaged in intercourse with the victim in the kitchen, appellant testified that the statement was incorrect and the product of police trickery. It should be noted that even in appellant's statement to the police, he denied having ejaculated inside the victim's vagina. Given the fact that the authorities were unable to match the semen samples found in the victim's vagina and on her panties to appellant, the pubic hairs were crucial to appellant's defense.[1]

Certainly, the presence of the foreign pubic hairs in the victim's underwear proximate in time to the alleged rape combined with the prosecution's inability to match the semen samples to appellant and the dearth of evidence of trauma to the victim's person could create reasonable doubt in the mind of the jurors that appellant raped the victim. Further, I do no think that evidence of the pubic hairs were unduly prejudicial to the victim, since other evidence of her prior sexual conduct was admitted into evidence without objection, i.e., appellant

---

1. I note that the police did not even attempt to examine the victim's panties for the presence of semen and match any sample found to that of appellant until June 6, 1991, almost three months after the incident. Further, there is no evidence that the police ever attempted to match the sperm samples taken from the victim's vagina to appellant.

testified that the victim was in the kitchen fixing a bottle *for her daughter* when the original incident took place. N.T., 5/20/91, p. 227.

Accordingly, I would find that the lower court abused its discretion in refusing admission of the pubic hairs, and I would remand this case for a new trial.