667 A.2d 215

COMMONWEALTH of Pennsylvania

v.

Barry WIDMER, Jr., Appellant,

COMMONWEALTH of Pennsylvania, Appellant,

v.

Barry WIDMER, Jr., Appellee.

Superior Court of Pennsylvania.

Argued June 22, 1995.

Filed Oct. 2, 1995.

Reargument Denied Dec. 8, 1995.

410

412

Patrick J. Connors, Media, for Barry Widmer, Jr.,

Dennis C. McAndrews, Assistant District Attorney, Wayne, for Commonwealth.

Before CAVANAUGH, WIEAND and OLSZEWSKI, JJ.

WIEAND, Judge:

Barry Widmer, Jr. was tried by jury and was found guilty of rape [1] and two counts of indecent assault.[2] He was sentenced on his rape conviction to partial confinement for a term of not less than thirty-six (36) months nor more than seventy-two (72) months, pursuant to which he was to be furloughed every week from 8:00 a.m. Monday until 6:00 p.m. Friday.[3] He was also ordered to make restitution to the victim, to pay the costs of prosecution and to perform three hundred fifty (350) hours of community service. Subsequently, pursuant to defense motion, Widmer's sentence of partial confinement was modified to a period of not less than thirty (30) months minus one

1. 18 Pa.C.S. § 3121(3).

2. 18 Pa.C.S. § 3126(a)(1) and (3).

3. Widmer's convictions on two counts of indecent assault were deemed to merge for purposes of sentencing with his rape conviction.

(1) day nor more than sixty (60) months minus one (1) day, with furloughs to commence every week from 6:00 p.m. Monday until 6:00 p.m. Friday.[4] All other aspects of the original sentence remained unchanged. Thereafter, the Commonwealth filed a motion for modification of sentence, and, when that motion was denied, both the Commonwealth and Widmer timely filed direct appeals.

## Widmer's Appeal

On appeal, Widmer has raised the following issues for review:

I. Whether the Trial Court erred in instructing the jury that, with regard to the offense of Rape of an unconscious victim, the term "unconscious" included a sleeping person.

II. Whether the evidence was insufficient to sustain the conviction of Rape since the Commonwealth failed to prove beyond a reasonable doubt that Ms. McCusker was "unconscious" as that term is used in 18 Pa.C.S. § 3121(3).

III. Whether the verdicts herein were against the weight of the evidence since the evidence clearly showed that the sexual relations engaged in by the parties were consensual in nature.

IV. Whether the Trial Court erred when it precluded Appellant from introducing evidence that Ms. McCusker had a proclivity toward "adventuresome" sexual conduct.

■ In reviewing a challenge to the sufficiency of the evidence to sustain a criminal conviction, this Court must: determine "whether, viewing all the evidence admitted at trial, together with all reasonable inferences to be drawn therefrom, in the light most favorable to the Commonwealth as the verdict winner, the jury could have found that each and every element of the charged offenses was proved beyond a reasonable doubt." *Commonwealth v. Sanchez,* 416 Pa.Super. 160, 166, 610 A.2d 1020, 1023 (1992). See also: *Commonwealth v. Smith,* 523 Pa. 577, 581, 568 A.2d

---

**4.** The period of Widmer's furloughs was altered so that the portion of his sentence actually spent in prison would remain essentially the same.

600, 602 (1989); *Commonwealth v. Hardcastle,* 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). "[I]t is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The factfinder is free to believe all, part or none of the evidence." *Commonwealth v. Tate,* 485 Pa. 180, 182, 401 A.2d 353, 354 (1979). See also: *Commonwealth v. Guest,* 500 Pa. 393, 396, 456 A.2d 1345, 1347 (1983); *Commonwealth v. Rose,* 463 Pa. 264, 268, 344 A.2d 824, 826 (1975). The facts and circumstances established by the Commonwealth "need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the jury unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'" *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977), quoting *Commonwealth v. Libonati,* 346 Pa. 504, 508, 31 A.2d 95, 97 (1943). See also: *Commonwealth v. Kravitz,* 400 Pa. 198, 215, 161 A.2d 861, 869 (1960), *cert. denied,* 365 U.S. 846, 81 S.Ct. 807, 5 L.Ed.2d 811 (1961).

*Commonwealth v. Battiato,* 422 Pa.Super. 285, 289, 619 A.2d 359, 360–361 (1993).

On the evening of July 29, 1993, Widmer and two friends, Rob Mullin and Edward Brown, went to the home of Widmer's uncle, Charles Cress, in Drexel Hill, Upper Darby Township, for the purpose of celebrating Widmer's twenty-first birthday. Among those present at Cress's home were David McAndrew, who also resided there, and McAndrew's girlfriend, Joanna McCusker. After about an hour of drinking, Widmer, Cress, Mullin, Brown and McAndrew went out to a bar to continue their celebration. They remained at the bar for approximately three to three and one-half hours and, then, the group returned to the home of Cress and McAndrew. Widmer went upstairs to use the bathroom, and, after he had been gone for what seemed to be a long time, McAndrew went upstairs to check his whereabouts. Upon doing so, McAndrew found Widmer in McAndrew's bedroom engaged in sexual inter-

course with McCusker. Widmer then left the house and McAndrew retrieved a handgun and followed him. Outside McAndrew threatened to kill Widmer, who, after pleading with McAndrew not to shoot him, left the scene with Mullin and Brown. At trial, Widmer testified that he and McCusker had engaged in consensual intercourse. McCusker, however, said that she had been sleeping and had awakened to find Widmer on top of her with his penis in her vagina. According to McAndrew, he entered his bedroom and found Widmer on top of McCusker, with McCusker hitting Widmer on the chest. Widmer had then rolled off McCusker onto the floor. He looked up at McAndrew and appeared to be scared. After Widmer had fled the room, McAndrew said that McCusker had been shaking and crying.

█ Widmer was convicted of rape under 18 Pa.C.S. § 3121(3), which provides as follows:

A person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse:

. . . .

(3) who is unconscious. . . .

Widmer argues that the evidence at his trial was insufficient to sustain his conviction under subsection (3) of the rape statute because a person who is sleeping is not "unconscious" as that term is used in the statute.

In *Commonwealth v. Price*, 420 Pa.Super. 256, 616 A.2d 681 (1992), the Superior Court considered this precise issue and "conclude[d] that a sleeping victim is 'unconscious' under § 3121(3)." *Id.* at 262, 616 A.2d at 683. The *Price* Court reasoned as follows:

[W]e hold here that the subsection proscribing intercourse with "unconscious" persons was enacted to proscribe intercourse with persons unable to consent because of their physical condition.

Webster defines "unconscious" as "not knowing or not perceiving: unaware." Webster's New Collegiate Dictio-

nary, 9th Ed. Thus, consistent with the common definition of "unconscious," and the legislative intent behind the rape statute, we hold that engaging in sexual intercourse with a sleeping victim was intended to be proscribed by § 3121(3). A person who is asleep is certainly unaware of her surroundings and unable to protect against the serious personal intrusion caused by non-consensual intercourse.

*Id.* at 262, 616 A.2d at 784 (footnote omitted). See: Toll, Pennsylvania Crimes Code Annotated, § 3121, at p. 368, quoting Model Penal Code Comment: [T.D. No. 4, pp. 246–256] (18 Pa.C.S. § 3121(3) "takes care of the situations where the woman is asleep or unconscious.") (footnote omitted). Although Widmer attempts to distinguish *Price* on its facts, it is clear that the rationale of *Price* is controlling. Inasmuch as the evidence, when viewed in the light most favorable to the Commonwealth, established that Widmer had engaged in non-consensual sexual intercourse with Joanna McCusker while she slept, the evidence was sufficient to establish Widmer's guilt under 18 Pa.C.S. § 3121(3).

Having concluded that the term "unconscious", as used in 18 Pa.C.S. § 3121(3), includes a victim who is sleeping at the time the intercourse occurs, it necessarily follows that the trial court did not err by instructing the jury that, for purposes of applying 18 Pa.C.S. § 3121(3), "a sleeping victim is unconscious." This was a correct statement of the law. "A jury instruction given by the trial court will be upheld so long as it 'sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision.' " *Commonwealth v. Calderini*, 416 Pa.Super. 258, 266, 611 A.2d 206, 210 (1992), quoting *Commonwealth v. Prosdocimo*, 525 Pa. 147, 154, 578 A.2d 1273, 1276 (1990).

Widmer further contends that the jury's verdicts of guilty were contrary to the weight of the evidence in that his testimony was more credible than that of the victim. This issue, however, was not presented to the trial court in a post-sentence motion for a new trial, but, rather, was first raised in Widmer's statement of matters complained of on appeal.

With respect thereto, the trial court observed as follows in its opinion pursuant to Pa.R.A.P. 1925(a):

It is this Court's unshakable opinion that the weight of the evidence lies clearly in Mr. Widmer's favor. " 'A trial court should award a new trial on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and [make] the award of a new trial ... imperative so that right may be given another opportunity to prevail.' " [*Commonwealth v. Horton, supra,* 434 Pa.Super. 478, 482, 644 A.2d 181, 183, (1994)] quoting *Commonwealth v. Whitney,* 512 A.2d 1152, 1155–56, 511 Pa. 232, 239 (1986). This Court's sense of justice was indeed shocked. *Defendant, by taking a direct appeal, has deprived this court of the opportunity to act on the weight of the evidence question,* and left this court with only the ability to express its view on this issue by addressing it in response to the Defendants concise statement of matters complained of on appeal. Although under the new rules governing appellate procedure, a defendant may bypass the Court of Common Pleas and appeal directly to Superior Court, it is important that the Superior Court be aware of the fact that if Mr. Widmer had moved for a new trial based upon the weight of the evidence, this Court most certainly would have granted his motion.

Trial Court Opinion at pp. 28–29 (emphasis added).

The Commonwealth argues that Widmer has waived any challenge to the weight of the evidence by failing to file a post-sentence motion for a new trial in the trial court. Recently, in *Commonwealth v. Hodge,* 441 Pa.Super. 653, 658 A.2d 386 (1995), the Superior Court held that it could not consider, in the first instance, a challenge to the weight of the evidence if it had not first been directed to the trial court via a post-sentence motion for new trial under Pa.R.Crim.P. 1410. The *Hodge* Court reasoned as follows:

Appellant has raised the issue of the weight of the evidence for the first time on appeal. He elected under Pa.R.Crim.P. 1410 not to file optional post-sentence motions,

but, instead, filed an immediate notice of appeal after sentence had been imposed. Therefore, the trial court was never given an opportunity to exercise its discretion in determining whether appellant should be awarded a new trial on grounds that the verdict was contrary to the weight of the evidence. Appellant suggests, however, that, because he exercised his right to file an immediate appeal, this Court should now take the place of the trial court and review in the first instance whether the jury's verdicts were contrary to the weight of the evidence. Absent such a review, he contends, a defendant who elects under Rule 1410 to take an immediate appeal will effectively be precluded from challenging the weight of the evidence.

In *Commonwealth v. Brown*, 538 Pa. 410, 434–440, 648 A.2d 1177, 1189–1191 (1994), the Pennsylvania Supreme Court made clear that challenges to the weight of the evidence must first be presented to the trial court. An appellate court may only review the trial court's exercise of discretion in granting or denying a new trial on grounds that the verdict was contrary to the weight of the evidence; it may not address "the underlying question whether the verdict is against the weight of the evidence." *Id.* at 436, 648 A.2d at 1189. In so holding, the Supreme Court observed that:

'An allegation that the verdict is against the "weight" of the evidence is a matter to be resolved by the trial court:

While there may be some legitimacy for a trial court, who [sic] has also observed the witnesses as they testified, to consider the weight of the evidence and to that extent review the jury's determination of credibility, there is surely no justification for an appellate court, relying upon a cold record, to exercise such a function.

*Commonwealth v. Farquharson*, 467 Pa. 50, 59–60, 354 A.2d 545, 550 (1976).'

*Id.* at 437–438, 648 A.2d at 1190, quoting *Commonwealth v. Karkaria*, 533 Pa. 412, 418–419 n. 3, 625 A.2d 1167, 1170 n. 3 (1993). The *Brown* court further declared that:

'Unlike the challenge of legal sufficiency of the evidence, the complaint that the verdict was against the weight of the evidence requires an assessment of the credibility of the testimony offered by the Commonwealth. It is a rule of this Commonwealth that an appellate tribunal should not entertain a challenge to the weight of the evidence since their examination is confined to the "cold record." '

*Commonwealth v. Brown, supra* at 438, 648 A.2d at 1191, quoting *Commonwealth v. Nelson,* 514 Pa. 262, 271 n. 3, 523 A.2d 728, 733 n. 3 (1987), *cert. denied,* 484 U.S. 928, 108 S.Ct. 293, 98 L.Ed.2d 253 (1987) (citations omitted).

It seems clear, therefore, that this Court cannot entertain, in the first instance, a request for a new trial on grounds that the verdict was contrary to the weight of the evidence. This is not an issue of waiver. Even though, as a general rule, a defendant need not file a post-sentence motion in order to preserve issues for appellate review, a weight of the evidence argument may be addressed only by a trial court. Therefore, a defendant, who wishes to seek a new trial on grounds that the verdict was contrary to the weight of the evidence, must necessarily raise this issue via post-sentence motion in the trial court. If the trial court denies the motion, the defendant may then file an appeal in which the trial court's exercise of discretion will be subject to review. Because appellant did not challenge the weight of the evidence in the trial court in this case, we will not address the issue on appeal.

*Commonwealth v. Hodge, supra* at 658–660, 658 A.2d at 388–389 (footnote omitted).

Instantly, it was not adequate for Widmer to raise his challenge to the weight of the evidence in a statement of matters complained of on appeal under Pa.R.A.P. 1925(b). After Widmer had elected to file an immediate appeal, rather than file a post-sentence motion for a new trial, the trial court no longer had jurisdiction to act on the case. See: Pa.R.A.P. 1701(a). The trial court's preparation of an opinion pursuant to Pa.R.A.P. 1925(a) did not present the court with jurisdiction

to exercise discretion and rule upon Widmer's claim with respect to the weight of the evidence. See: *Commonwealth v. Picker*, 293 Pa.Super. 381, 384–385, 439 A.2d 162, 164 (1981). Because there was no opportunity for the trial court, in its discretion, to grant or deny Widmer's request for a new trial on grounds that the jury's verdict was contrary to the weight of the evidence, there is no exercise of trial court discretion for this Court to review. And, pursuant to the holding of *Commonwealth v. Hodge*, this Court is precluded from reviewing the weight of the evidence on appeal. Therefore, we reject Widmer's challenge to the weight of the evidence.

 The final issue raised by Widmer concerns the trial court's exclusion, under the Rape Shield Law, of evidence that the victim had a proclivity toward "adventuresome" sexual conduct. Specifically, Widmer sought to show that, approximately eleven hours prior to the alleged rape, the victim and her boyfriend had had a sexual encounter in a public swimming pool in view of many persons. Such evidence, Widmer argues, would have been relevant to prove consent in that the sexual encounter occurring between the victim and him was consistent with the victim's appetite for "risky" sex.

The Rape Shield Law provides as follows:

### § 3104. Evidence of victim's sexual conduct

(a) **General rule.**—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

(b) **Evidentiary proceedings.**—A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof

are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S. § 3104. "The purpose of the Rape Shield Law is to prevent a sexual assault trial from degenerating into an attack upon the victim's reputation for chastity." *Commonwealth v. Berkowitz*, 537 Pa. 143, 151, 641 A.2d 1161, 1165 (1994). See also: *Commonwealth v. Johnson*, 536 Pa. 153, 158, 638 A.2d 940, 942 (1994). However, the statute will not preclude the admission of evidence which is exculpatory in nature, "which directly negates the act of intercourse with which a defendant is charged." *Commonwealth v. Majorana*, 503 Pa. 602, 611, 470 A.2d 80, 84 (1983). See also: *Commonwealth v. Stansbury*, 433 Pa.Super. 493, 498–499, 640 A.2d 1368, 1370–1371 (1994). Similarly, "[t]he Rape Shield Law is not meant to prevent the admission of evidence that goes to bias or motive for testifying against the defendant when it might be exculpatory as to the defendant and establish a motive for the victim to color her testimony." *Commonwealth v. Riley*, 434 Pa.Super. 414, 420, 643 A.2d 1090, 1093 (1994). See: *Commonwealth v. Black*, 337 Pa.Super. 548, 487 A.2d 396 (1985) (en banc).

Instantly, the evidence of the victim's prior sexual conduct with her boyfriend was not offered by Widmer for the purpose of demonstrating that he did not engage in sexual intercourse with the victim. Similarly, he was not seeking to demonstrate motive or bias on the part of the victim. Rather, Widmer was seeking to bolster his claim of consent by portraying the victim as having been sexually promiscuous. This, however, is precisely the type of evidence which the Rape Shield Law sought to exclude. Thus, in *Commonwealth v. Dear*, 342 Pa.Super. 191, 492 A.2d 714 (1985), the Superior Court held that evidence of a victim's prior sexual conduct with third persons "is irrelevant to prove either consent or general moral defect of the victim[,]" and, therefore, such evidence is prohibited by the Rape Shield Law. *Id.* at 202, 492 A.2d at 720. The same rationale is controlling herein.

*The Commonwealth's Appeal*

 The Commonwealth argues in its appeal that the trial court abused its discretion by imposing a sentence which called for a minimum term of incarceration for only three hundred ninety (390) days or thirteen (13) months for the crime of rape. Because this issue raises a challenge to the discretionary aspects of sentence, we must first determine whether the Commonwealth has raised a substantial question that the sentence imposed upon Widmer was not appropriate under the Sentencing Code as a whole. See: *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987).

 "Although the existence of a substantial question must be determined on a case by case basis, the Superior Court will generally review the discretionary aspects of sentencing where a colorable argument is made that the actions of the sentencing court were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Groft*, 424 Pa.Super. 510, 520, 623 A.2d 341, 347 (1993). Here, in its concise statement under Pa.R.A.P. 2119(f), the Commonwealth has asserted that the trial court erroneously applied the Sentencing Guidelines, failed to state adequate reasons for departing from the guidelines and relied upon improper mitigating factors in imposing sentence. Because we deem these issues to constitute substantial challenges to the appropriateness of the sentence imposed upon Widmer, we will allow this appeal by the Commonwealth from the discretionary aspects of sentencing.

 Our review of a sentence imposed by a trial court is guided by the following principles:

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of that discretion." *Commonwealth v. Anderson*, 381 Pa.Super. 1, 16, 552 A.2d 1064, 1072 (1988). See also: *Commonwealth v. Hunter*, 381 Pa.Super. 606, 618–619, 554 A.2d 550, 556 (1989); *Commonwealth v. Fries*, 362 Pa.Super. 163, 167, 523 A.2d 1134, 1135

(1987). However, the sentencing court must state its reasons for the sentence on the record, which in turn aids in determining "whether the sentence imposed was based upon accurate, sufficient and proper information," *Commonwealth v. Riggins,* 474 Pa. 115, 131, 377 A.2d 140, 148 (1977). See also: *Commonwealth v. Thomas,* 370 Pa.Super. 544, 551–553, 537 A.2d 9, 12–13 (1988); *Commonwealth v. White,* 341 Pa.Super. 261, 270, 491 A.2d 252, 257 (1985). When the sentence imposed is outside the sentencing guidelines, moreover, the court must "provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines." 42 Pa.C.S. § 9721(b). See also: *Commonwealth v. Sanchez,* 372 Pa.Super. 369, 373, 539 A.2d 840, 842 (1988), *affirmed,* 522 Pa. 153, 560 A.2d 148 (1989); *Commonwealth v. Vinson,* 361 Pa.Super. 526, 534, 522 A.2d 1155, 1159 (1987). This requirement is satisfied "when the judge states his reasons for the sentence on the record and in the defendant's presence." *Commonwealth v. Smith,* 369 Pa.Super. 1, 6, 534 A.2d 836, 838 (1987). See also: *Commonwealth v. Chesson,* 353 Pa.Super. 255, 256–257, 509 A.2d 875, 876 (1986); *Commonwealth v. Royer,* 328 Pa.Super. 60, 69, 476 A.2d 453, 457 (1984).

When imposing sentence, a court is required to consider "the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Frazier,* 347 Pa.Super. 64, 67, 500 A.2d 158, 159 (1985). See also: *Commonwealth v. Didyoung,* 369 Pa.Super. 346, 353, 535 A.2d 192, 195 (1988); *Commonwealth v. Martin,* 328 Pa.Super. 498, 501, 477 A.2d 555, 557 (1984). In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation. *Commonwealth v. Phillips,* 342 Pa.Super. 45, 51, 492 A.2d 55, 58 (1985). See: *Commonwealth v. O'Brien,* 282 Pa.Super. 193, 197, 422 A.2d 894, 896 (1980). "It must be demonstrated that the court considered the statutory factors enunciated for determination of sentencing alternatives, and the sentencing guidelines." *Commonwealth v. Hainsey,* 379 Pa.Super. 376, 382, 550 A.2d 207, 209

(1988). See also: *Commonwealth v. Meo*, 362 Pa.Super. 328, 332–333, 524 A.2d 902, 904 (1987); *Commonwealth v. Ruffo*, 360 Pa.Super. 180, 185–186, 520 A.2d 43, 46 (1987). Additionally, the court must impose a sentence which is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of the defendant." *Commonwealth v. Frazier, supra.* See also: *Commonwealth v. Lowe*, 361 Pa.Super. 343, 347, 522 A.2d 614, 616 (1987); *Commonwealth v. Dixon*, 344 Pa.Super. 293, 310, 496 A.2d 802, 810 (1985); 42 Pa.C.S. § 9721(b). Where the sentencing judge had the benefit of a pre-sentence report, however, it will be presumed that he "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 519 Pa. 88, 101–102, 546 A.2d 12, 18 (1988). See also: *Commonwealth v. Catanch*, 398 Pa.Super. 466, 474, 581 A.2d 226, 230 (1990); *Commonwealth v. Bruner*, 388 Pa.Super. 82, 107, 564 A.2d 1277, 1289 (1989). "Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed." *Commonwealth v. Devers, supra* at 519 Pa. 102, 546 A.2d at 18.

*Commonwealth v. McClendon*, 403 Pa.Super. 467, 480–481, 589 A.2d 706, 712–713 (1991) (en banc).

■■■ The Sentencing Guidelines, as applicable in the instant case, called for a minimum sentence of confinement of 18 to 36 months in the mitigated range; 36 to 60 months in the standard range; and 60 to 84 months in the aggravated range.[5] In imposing a minimum sentence of partial confinement for not less than 30 months minus one day, the trial court stated that it was sentencing Widmer in the mitigated range of the guidelines. The Commonwealth asserts, howev-

5. Widmer was sentenced under the Sentencing Guidelines as amended on August 9, 1991. The guidelines were subsequently amended again, effective in all cases where the offense was committed on or after August 12, 1994. This most recent amendment to the guidelines is not applicable in this case, as the offense for which Widmer was being sentenced occurred on July 29, 1993.

er, that the guideline ranges refer to sentences of total confinement and that, when the periods during which Widmer will be furloughed are excluded, his actual minimum sentence would only be for a period of 13 months. Thus, the Commonwealth argues, the sentence imposed upon Widmer actually constituted a substantial downward deviation from the Sentencing Guidelines.

After careful review, we are convinced that the Commonwealth's interpretation of the Sentencing Guidelines is incorrect and that the trial court properly determined the applicable guideline ranges and, then, sentenced Widmer within the mitigated range thereof. Section 303.9(a) of the guidelines in effect at the time of Widmer's sentencing provided as follows:

(a) All guideline sentence ranges are months of minimum confinement as defined in 42 Pa.C.S. §§ 9755(b) and 9756(b) (relating to partial and total confinement).

204 Pa.Code § 303.9 (former version). The Implementation Manual prepared by the Pennsylvania Commission on Sentencing discusses this section of the guidelines in the following terms:

Under the guidelines, confinement may be either partial confinement (such as work release) or total confinement. For example, when the guideline sentence range is 4 to 8 months, a 6 month minimum sentence served on work-release is within the guidelines; a 6 month minimum sentence served without work-release eligibility would also be within the guidelines.

. . . .

Confinement may be either partial or total in order to give the court the widest possible latitude in sentencing, consistent with the commission's charge to promote uniform and equitable sentences. In addition, the differences in the availability of work-release facilities among the counties made it impractical to specify the cases for which work-release should or should not be ordered.

Pa. Commission on Sentencing, Implementation Manual, 3rd edition/revised (August 9, 1991), Description and Commentary at p. 70. Thus, it seems clear that the guideline ranges in effect at the time of Widmer's sentencing contemplated minimum sentences of either total or partial confinement. The trial court properly applied the guidelines in the instant case and sentenced Widmer within the mitigated guideline range. The Commonwealth's arguments to the contrary are without merit.

 The Commonwealth also contends that a sentence of partial confinement was inappropriate in this case and was based upon the trial court's consideration of improper mitigating factors. With respect to a sentence of partial confinement, the Sentencing Code provides as follows:

(a) **General rule.**—In imposing a sentence involving partial confinement the court shall specify at the time of sentencing the length of the term during which the defendant is to be partially confined, which term may not exceed the maximum term for which he could be totally confined, and whether the confinement shall commence in a correctional or other appropriate institution.

(b) **Minimum sentence.**—The court shall impose a minimum sentence of partial confinement which shall not exceed one-half of the maximum sentence imposed.

(c) **Purposes for partial release.**—The court may in its order grant the defendant the privilege of leaving the institution during necessary and reasonable hours for any of the following purposes:

(1) To work at his employment.

(2) To seek employment.

(3) To conduct his own business or to engage in other self-employment, including housekeeping and attending to the needs of the family.

(4) To attend an educational institution or participate in a course of vocational training.

(5) To obtain medical treatment.

(6) To devote time to any other purpose approved by the court.

42 Pa.C.S. § 9755(a)–(c).

At the time of Widmer's original sentencing hearing, the trial court stated the following reasons for choosing a sentence of partial confinement over one of total confinement:

This is a difficult case because the type of offense that we have involved here is a serious one and appears to be the bane along with drugs of our society. The sentencing code talks about total confinement in circumstances where there is an und[ue] risk during a period of probation or partial confinement that the Defendant will commit another crime. I don't find that to be a likelihood in this case. Another factor[ ] is that the Defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution and I think that that is not the case here. I think the Defendant is in need of correctional treatment. I think that treatment can be dealt with in a non-confinement, non-total confinement situation.

The other factor is that a lesser sentence will depreciate the seriousness of the crime of the Defendant. I think I can sculpture a sentence here that will constitute adequate punishment to the Defendant for the serious crime that was committed without depreciating the seriousness of that crime. The sentencing code also contains provisions with respect to factors that may support a sentence which is less than total confinement. The first factor is that the common—that the criminal conduct of the Defendant neither caused nor threatened serious harm. I think that's only partially true here. There may have been no physical damage. There may have been no physical harm. But the psychological and emotional harm is every bit as damaging as an[y] physical harm that could have been inflicted and in my view, certainly is going to last a lot longer than it takes a physical injury to heal. The other factor is that the Defendant did not contemplate that his conduct would cause or threaten serious harm. I believe that he did not contemplate that his conduct would cause that kind of harm, but I

think that his conduct was so grossly negligent or reckless, that in these circumstances as to whether or not he had the consent of the victim to this contact, that he should have contemplated that some harm, at least emotional harm, certainly would result.

The sentencing code also provides that there were substantial grounds tending to excuse or justify the criminal conduct of the Defendant so failing to establish a defense. I don't think that's a factor here. I don't think there's any excuse for what occurred. And the other factor is certainly not applicable here, that the victim of the criminal conduct of the Defendant induced or facilitated its commission. I don't find that to be a factor notwithstanding the testimony that the victim, if believed the testimony of the Defendant, that the victim facilitated his penetration. I don't think that's the case here. That the Defendant has compensated and will compensate the victim of his criminal conduct for the damage or injury she sustained and I tend—and I intend to deal with these factors in my sentence. The other factor is that the Defendant has no history of prior delinquency or criminal activity or has led a law abiding life for a substantial period of time before the commission of the present crime. I think that's clearly the case here and in this context, in response to your legal argument, Mr. Reilly, the guidelines, the sentencing guidelines are exactly that. They're guidelines. And the Court may sentence either in the standard range or aggravated or mitigated range, and if it deviates from the standard range, then it must provide some explanation of its basis for so doing. While the fact that the Defendant has no prior criminal record may already be factored into the recommendation, that is not to say that that recommendation is going to be suitable in every case involving a degree of culpability such as this one of a first degree felony. And that in an appropriate case, I think the Court can and should deviate from the guidelines. The other factor is that the criminal conduct of the Defendant was a result of circumstances unlikely to recur. I believe that is the case here. I think what happened here, given the background and circumstances of the Defendant,

is not likely to recur and when I say that, I don't mean in any way to depreciate the nature of the harm that was done, because whether or not something happens or doesn't happen in the future doesn't change anything that happened in the past. The other factor is that the character and attitude of the Defendant indicate that he is unlikely to commit another crime. I think the information that I have, including all of the testimony in this case, does indicate that it is unlikely that this Defendant is going to commit another crime. I think the Defendant is particularly likely to respond affirmatively to some—to a sentence which is less than total confinement and I think a total confinement sentence in this case would be disproportionate to the seriousness of the offense for which he has been convicted. Therefore, based on those findings of the Court and considering Section 9724 of the sentencing code which does deal with partial confinement, I don't think probation is an appropriate sentence here. That section reads, "If in light of all the circumstances and when facilities are available, probation would be inappropriate," and I think that is the case here. But it further appears that if [a] sentence of total confinement would not be required in accordance with the criteria established in Section 9725, which I just went through relating to total confinement, the Court may impose a sentence involving partial confinement and I think that is what [is] appropriate in this case.

N.T. July 22, 1994 at pp. 32–36.

Subsequently, upon modification of Widmer's sentence, the trial court explained:

No matter what I do in this case, people are going to leave here dissatisfied, but I can only do what I believe my reading of the law and my [conscience] dictate in this case. The elements that—and the testimony that you referred to, Mr. Reilly, in my view comes within the guideline standard that there was substantial grounds tending to mitigate Defendant's conduct or culpability, although not sufficient to constitute a defense.

That is what I sincerely believe to be the circumstances in this case. None of the testimony that you referred to was

rebutted, and although as I said, it doesn't rise to the level of a defense, in my view it constitutes a mitigating factor. I cannot [ ], and I do not, sentence Defendants for every Rape that could occur in the Commonwealth of Pennsylvania under unspecified circumstances. I can only sentence for the crime which the Defendant was found guilty in the factual circumstances in this case.

The Commonwealth's assertions in its brief are over-drawn and far exceed the factual perimeters of this case and do not consider the factors that I've just mentioned. Not-withstanding the Commonwealth's assertions, it is my belief that from having heard the—both the parties in this case, the Defendant as well as the victim, and had an opportunity to reach some conclusion that contrary to the Common-wealth's assertion, I think that the Defendant is a candidate for rehabilitation and that he is unlikely to commit further crimes.

. . . .

In addition to what I've just said, I incorporate all of what I said the last time concerning the reason for my sentence, and my sentence is based on all those reasons, not any one in particular, but all of them together. And that constitutes my best judgment in this case.

N.T. August 15, 1994 at pp. 27–29.[6]

 Having reviewed the transcripts of the sentencing proceedings in the instant case, we are satisfied that the trial court considered all necessary sentencing factors. The court properly applied the Sentencing Guidelines and considered all of the available sentencing alternatives provided in the Sentencing Code. In determining that a sentence of partial

6. Widmer's sentence was modified to give effect to the trial court's original intent that he serve his sentence in a county facility and be furloughed during the week as ordered by the court. However, because the original maximum sentence imposed exceeded five (5) years, Widmer was required by law to serve his sentence in a state prison, subject to the supervision of the Department of Corrections, which had indicated that it would not give effect to the portion of the trial court's sentence requiring Widmer's furlough during the week.

confinement was the appropriate punishment in this case, the trial court took into consideration Widmer's background and character and attempted to balance carefully the seriousness of the crime with Widmer's rehabilitative needs. Although we may not have imposed the same sentence as the trial court,

> [i]t is not for a reviewing court to substitute its discretion for that of the trial court, but merely to ascertain that proper consideration was given to relevant factors. The Supreme Court has made it abundantly clear that a sentencing court's discretion is broad, and that a reviewing court should not disturb the exercise of that discretion except for substantial reasons. See, e.g.: *Commonwealth v. Ward*, 524 Pa. 48, 568 A.2d 1242 (1990); *Commonwealth v. Jones*, 523 Pa. 138, 565 A.2d 732 (1989); *Commonwealth v. Devers*, *supra*. No such reasons appear in the instant case. Where, as here, the sentencing court has considered necessary sentencing factors and has exercised conscientiously and correctly its sentencing prerogatives, the sentence will be affirmed.

*Commonwealth v. McClendon, supra* at 485, 589 A.2d at 715. Having found no abuse of discretion by the trial court in imposing sentence upon Widmer, the Commonwealth's challenge to the discretionary aspects of the sentence must be rejected.

The judgment of sentence is affirmed.

CAVANAUGH, J., files a Dissenting Opinion.

CAVANAUGH, Judge, dissenting:

While I do not disagree with the reasoning of the majority, I would favor an alternative, less orthodox, disposition of this appeal. I would do so in recognition of the following factors:

1. The instant verdict was rendered within months after the effective date of Pa.R.Crim.P. 1410 which provided for a new and radically different procedural methodology in handling post-verdict appeals.

2. In Pennsylvania weight of the evidence arguments are almost exclusively for the trial judge to decide, and are otherwise, as a practical matter, non-reviewable.

3. The trial court has articulated in no uncertain terms, a declaration that, if properly presented, he would grant appellant a new trial on the claim that the jury verdict was against the weight of the evidence.

4. The appeal route taken by appellant's counsel, while not involving waiver in the traditional sense, certainly is tantamount to waiver.

5. The efficiencies which inspired Rule 1410 were not intended to facilitate the de facto waiver of meritorious issues.

6. The present disposition is a script for an all but certain meritorious plea for post conviction collateral relief.

7. I agree with the majority disposition of the Commonwealth's appeal.

Accordingly, I would vacate the sentence and remand this case for the resubmission of post-verdict motions nunc pro tunc.